John Gerald MASS, TDCJ No. 1133783, Petitioner,

v.

Nathaniel A. QUARTERMAN, Director, Texas Department of Criminal Justice, Correctional Institutions Division, Respondent.

No. CIV. SA05CA1213OG.

United States District Court, W.D. Texas, San Antonio Division.

Aug. 21, 2006.

John Gerald Mass, Fort Stockton, TX, pro se.

Ana M. Jordan, Assistant Texas Attorney General, Austin, TX, for Respondent.

## MEMORANDUM OPINION AND ORDER

GARCIA, District Judge.

Petitioner John Gerald Mass filed this federal habeas corpus action pursuant to Title 28 U.S.C. Section 2254 seeking to collaterally attack his August, 2002, Bexar County convictions for three Counts of aggravated sexual assault. For the reasons set forth below, all relief requested in petitioner's federal habeas corpus petition is denied and petitioner is denied a Certificate of Appealability.

### I. Background

On September 12, 2001, a Bexar County grand jury indicted petitioner on three Counts of aggravated sexual assault.[1] More specifically, the indictment against petitioner alleged, on three separate occasions in late–1999, petitioner had caused his finger to penetrate the female sexual organ of the same complainant, who was at all relevant times under the age of fourteen.

The guilt-innocence phase of petitioner's jury trial commenced on August 21, 2002.

That same date, the jury returned verdicts finding petitioner guilty on all three Counts.[2] On August 22, 2002, the same jury sentenced petitioner to serve a 15–year term of imprisonment on Count One and two, ten-year, probated, sentences on Counts Two and Three.[3]

Petitioner filed an appeal.[4] After his first court-appointed appellate counsel was discharged, the Texas Fourth Court of Appeals affirmed petitioner's conviction in an unpublished opinion issued March 24, 2004. *Mass v. State*, No. 04–02–00636–CR, 2004 WL 572310 (Tex.App.—San Antonio, March 24, 2004). On May 10, 2004, petitioner filed a petition for discretionary review asserting the same two grounds included in his appellate counsel's appellant's brief. On September 22, 2004, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *PDR no.* 0598–04 (Tex.Crim.App. September 22, 2004). Petitioner did not thereafter seek certiorari review of his conviction or sentence by the United States Supreme Court.

---

1. The indictment against petitioner alleged petitioner had intentionally and knowingly caused the penetration of the female sexual organ of Nykesha Butler by placing his finger in her female sexual organ while she was a child younger than fourteen years of age. The three Counts in petitioner's indictment alleged those separate incidents occurred on or about November 11, November 18, and December 2, 1999, respectively. Transcript of pleadings. Motions and other documents filed in petitioner's state trial court proceeding (henceforth "Trial Transcript"), at pp. 2–3.

2. Trial transcript, at pp. 44–46; Statement of Facts from petitioner's trial (henceforth "S.F. Trial"), Volume 3 of 5, at pp. 242–49.

3. Trial Transcript, at pp. 56–57; S.F. Trial, Volume 4 of 5, at pp. 175–78.

4. Petitioner's appellate counsel filed a brief on September 11, 2003 containing only two

points of error, i.e., arguments that (1) the trial court erred in denying his motions for mistrial following repeated instances of the prosecution eliciting testimony concerning allegations of extraneous criminal conduct by petitioner in violation of the trial court's prior ruling granting petitioner's motion in limine on this subject and (2) the trial court erred during the punishment phase of trial in admitting over petitioner's objections prejudicial hearsay regarding another of petitioner's alleged victim's outcry.

On July 28, 2003, petitioner filed a *pro se* supplemental appellate brief in which he attempted to assert eleven points of error. In its opinion affirming petitioner's conviction, the Texas Fourth Court of Appeals refused to address the merits of any of these grounds, concluding petitioner had no right to hybrid representation on appeal.

On October 1, 2004, petitioner filed an application for state habeas corpus relief.[5] In an Order issued November 16, 2004, the state trial court (1) concluded petitioner's trial and appellate counsel had not rendered ineffective assistance, (2) concluded petitioner's Confrontation Clause arguments were procedurally defaulted by virtue of petitioner's failure to specifically assert a timely Sixth Amendment objection at trial to admission of the hearsay testimony in question, (3) concluded none of the allegedly withheld documents contained any exculpatory or mitigating information, and (4) recommended petitioner's state habeas corpus application be denied.[6] On March 9, 2005, the Texas Court of Criminal Appeals denied petitioner's state habeas corpus application without written Order based on the findings of the trial court made without a hearing. *Ex parte Mass*, WR–60, 728–01 (Tex.Crim.App. March 9, 2005).

On January 4, 2006, petitioner filed his federal habeas corpus petition in this Court, urging as grounds for relief arguments that (1) there was insufficient evidence to support the jury's guilty verdicts, (2) he was denied his Sixth Amendment Confrontation Clause right to confront adverse witnesses when hearsay testimony regarding extraneous misconduct was admitted during both phases of his trial, (3) his rights under *Brady v. Maryland* were violated by the prosecution's failure to disclose numerous documents to petitioner's trial counsel, (4) Blacks were under-represented on his jury venire, (5) the trial court erred in admitting testimony regarding extraneous misconduct which had been the subject of a previously granted motion in limine, (6) the trial court erred in admitting hearsay testimony during the punishment phase of trial, (7) petitioner's trial counsel rendered ineffective assistance by failing to (a) move to strike a biased juror, (b) request a jury instruction on the prosecution's breaches of the motion in limine, and (c) adequately investigate the case against petitioner and discover numerous documents and witnesses who could have offered favorable testimony at trial, (8) his appellate counsel rendered ineffective assistance by failing to (a) file a timely mo-

---

**5.** Transcript of pleadings, motions, and other documents filed in petitioner's state habeas corpus proceeding (henceforth "State Habeas Transcript"), at pp. 1–42.

As grounds for relief, petitioner's state habeas application included arguments that (1) petitioner's trial counsel rendered ineffective assistance by failing to (a) object to hearsay testimony offered through prosecution witnesses Larry Anderson and Eugenia Evans, (b) request curative jury instructions after similar hearsay testimony was presented to the jury, ©) properly investigate the case against petitioner and discover five reports or statements (specifically an August 6, 200 report by David Johnson, a February 25, 2000 affidavit from Earl Bullock, Jr., a statement by Eugenia Evans, an October 5, 2000 affidavit from Kenneth Hays, and an affidavit from Belinda Cruz), (d) subpoena Belinda Cruz, Eugenia Evans, Earl Bullock, and Theda Wilson to testify at trial, and (e) exclude a biased juror from service on petitioner's jury, (2) petitioner's initial appellate counsel rendered

ineffective assistance by failing to timely file petitioner's appellant's brief, (3) petitioner's Sixth Amendment Confrontation Clause rights were violated by virtue of (a) the admission of hearsay testimony at the punishment phase of trial by Michelle Sims, (b) the admission of hearsay testimony at the guilt-innocence phase of trial by the complainant, and (c) petitioner's trial counsel's failure to call Theda Wilson to testify regarding Wilson's bias against petitioner, and (4) petitioner's rights under the holding in the Supreme Court's opinion in *Brady v. Maryland* were violated by the failure of the prosecution to disclose to petitioner's trial counsel four documents (specifically an August 6, 2000 report by David Johnson, the February 21, 2000 "affidavit" of Eugenia Evans, the February 25, 2000 "affidavit" of Earl Bullock, and the January 30, 2000 "affidavit" of Belinda Cruz).

**6.** State Habeas Transcript, at pp. 71–75.

tion for new trial and (b) file a timely appellate brief, and (9) the state intermediate appellate court erred in refusing to address the merits of the claims contained in petitioner's *pro se* supplemental appellant's brief.[7]

On March 28, 2006, respondent filed an answer in which he argued, in part, that (1) petitioner failed to exhaust available state remedies, and thereby procedurally defaulted, on his complaints of insufficient evidence, the absence of a fair-cross-section of the community in his jury venire, his appellate counsel's failure to timely file a motion for new trial, and the failure of the Texas Fourth Court of Appeals to address the merits of petitioner's *pro se* supplemental brief, (2) petitioner procedurally defaulted on his Confrontation Clause claims by failing to assert a timely objection on that ground at trial, (3) there was no showing the prosecution ever possessed any of the allegedly withheld documents or that any of those documents contained any relevant, material, evidence, (4) the failure of the state trial court to self-enforce its earlier ruling on petitioner's motion in limine did not render petitioner's trial fundamentally unfair, and (5) petitioner's conclusory assertions of ineffective assistance did not satisfy the prejudice prong of *Strickland v. Washington*.[8]

On April 24, 2006, petitioner filed a response to respondent's answer, in which he challenged respondent's assertions that many of petitioner's claims herein were unexhausted.[9]

## II. *AEDPA Standard of Review*

Because petitioner filed his federal habeas corpus action after the effective date of the AEDPA, this Court's review of petitioner's claims for federal habeas corpus relief is governed by the AEDPA. *Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001). Under the AEDPA standard of review, this Court cannot grant petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Williams v. Taylor*, 529 U.S. 362, 404–05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. Section 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 15–16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003)("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"). A state court's

---

7. Docket entry nos. 3 & 4.

8. Docket entry no. 14.

9. Docket entry no. 15.

failure to cite governing Supreme Court authority does not, *per se* establish that the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents; 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell v. Esparza,* 540 U.S. at 16, 124 S.Ct. at 10.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534–35, 156 L.Ed.2d 471 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Wiggins v. Smith,* 539 U.S. at 520–21, 123 S.Ct. at 2535. The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Wiggins v. Smith,* 539 U.S. at 520, 123 S.Ct. at 2535; *see Price v. Vincent,* 538 U.S. 634, 641, 123 S.Ct. 1848, 1853, 155 L.Ed.2d 877 (2003)("it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner"). Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Yarborough v. Alvarado,* 541 U.S. 652, 660–61, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004)("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003).

The AEDPA also significantly restricts the scope of federal habeas review of state court fact findings. A petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *See Morrow v. Dretke,* 367 F.3d 309, 315 (5th Cir.2004)("The AEDPA requires that we presume correct the state court's findings of fact unless the petitioner 'rebuts the presumption of correctness by clear and convincing evidence.'"), *cert. denied,* 543 U.S. 960, 125 S.Ct. 421, 160 L.Ed.2d 325 (2004); *Pondexter v. Dretke,* 346 F.3d 142, 146 & 149 (5th Cir.2003)(holding, pursuant to § 2254(e)(1), state court findings of fact are presumed correct and the petitioner has the burden of rebutting that presumption by clear and convincing evidence), *cert. denied,* 541 U.S. 1045, 124 S.Ct. 2160, 158 L.Ed.2d 736 (2004); *Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir.2003)(holding the same), *cert. denied,* 540 U.S. 1163, 124 S.Ct. 1170, 157 L.Ed.2d 1208 (2004); 28 U.S.C. § 2254(e)(1).

Finally, in this Circuit, a federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written opinion supporting its decision. *See Pondexter v. Dretke,* 346 F.3d at 148 (holding the precise question before a federal habeas court in reviewing a state court's rejection on the merits of an ineffective assistance claim is whether the state court's ultimate conclusion was objectively reasonable); *Anderson v. Johnson,* 338 F.3d 382, 390 (5th Cir.2003)(holding a federal habeas court reviews only a state

court's decision and not the opinion explaining that decision); *Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir.2002) (*en banc*) (holding a federal court is authorized by § 2254(d) to review only a state court's decision and not the written opinion explaining that decision), *cert. denied,* 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003).

### III. *Procedural Default on Unexhausted Claims*

A. *The Requirement of Exhaustion*

■■■ A state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' *federal* rights. *Baldwin v. Reese,* 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999); *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); 28 U.S.C. § 2254(b)(1). To provide the State with this necessary "opportunity," the prisoner must "fairly present" his claim to the appropriate state court in a manner that alerts that court to the *federal* nature of the claim. *See Baldwin v. Reese,* 541 U.S. at 29–33, 124 S.Ct. at 1349–51 (rejecting the argument that a petitioner "fairly presents" a federal claim, despite failing to give any indication in his appellate brief of the federal nature of the claim through reference to any federal source of law, when the state appellate court could have discerned the federal nature of the claim through review of the lower state court opinion); *O'Sullivan v. Boerckel,* 526 U.S. at 844–45, 119 S.Ct. at 1732–33 (holding comity requires that a state prisoner present the state courts with the first opportunity to review a federal claim by invoking one complete round

of that State's established appellate review process); *Gray v. Netherland,* 518 U.S. 152, 162–63, 116 S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996) (holding that, for purposes of exhausting state remedies, a claim for *federal* relief must include reference to a specific constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief and rejecting the contention that the exhaustion requirement is satisfied by presenting the state courts only with the facts necessary to state a claim for relief). The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts and, thereby, to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. *Carey v. Saffold,* 536 U.S. 214, 220, 122 S.Ct. 2134, 2138, 153 L.Ed.2d 260 (2002); *Duncan v. Walker,* 533 U.S. 167, 179, 121 S.Ct. 2120, 2128, 150 L.Ed.2d 251 (2001); *O'Sullivan v. Boerckel,* 526 U.S. at 845, 119 S.Ct. at 1732; *Rose v. Lundy,* 455 U.S. 509, 518–19, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).

■■■ The exhaustion requirement is satisfied when the substance of the *federal* habeas claim has been "fairly presented" to the highest state court, i.e., the petitioner presents his claims before the state courts in a procedurally proper manner according to the rules of the state courts. *Baldwin v. Reese,* 541 U.S. at 29–33, 124 S.Ct. at 1349–51 (holding a petitioner failed to "fairly present" a claim of ineffective assistance by his state appellate counsel merely by labeling the performance of said counsel "ineffective," without accompanying that label with either a reference to *federal* law or a citation to an opinion applying *federal* law to such a claim). The exhaustion requirement is not met if the petitioner presents new legal theories or

factual claims in his federal habeas petition. *Anderson v. Harless,* 459 U.S. 4, 6–7, 103 S.Ct. 276, 277–78, 74 L.Ed.2d 3 (1982); *Riley v. Cockrell,* 339 F.3d 308, 318 (5th Cir.2003) ("It is not enough that the facts applicable to the federal claims were all before the State court, or that the petitioner made a similar state-law based claim. The federal claim must be the 'substantial equivalent' of the claim brought before the State court."), *cert. denied,* 543 U.S. 1056, 125 S.Ct. 866, 160 L.Ed.2d 781 (2005); *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir.2001) ("where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement"). To have "fairly presented" his *federal* claim, the petitioner must have reasonably alerted the state courts to the *federal* nature of his complaint. *Baldwin v. Reese,* 541 U.S. at 29–33, 124 S.Ct. at 1349–51; *Wilder v. Cockrell,* 274 F.3d at 260 ("A fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights.").

Respondent correctly points out that many of petitioner's claims for relief in this Court have not previously been "fairly presented" to the highest state court with jurisdiction over same, i.e., the Texas Court of Criminal Appeals. While petitioner did urge a host of claims in his *pro se* supplemental appellant's brief submitted on direct appeal to the Texas Fourth Court of Appeals, for unknown reasons, petitioner chose not to include any of those claims in his petition for discretionary review filed with the Texas Court of Criminal Appeals. Thus, the only claims petitioner "fairly presented" to the Texas Court of Criminal Appeals on direct appeal were his complaints the state trial court erred in denying his motions for mistrial and in admitting hearsay testimony during the punishment phase of trial.

### B. *Procedural Default Principles*

■ Procedural default occurs where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred. *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991). In either instance, the petitioner is deemed to have forfeited his federal habeas claim. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999). Procedural defaults only bar federal habeas review when the state procedural rule which forms the basis for the procedural default was "firmly established and regularly followed" by the time it was applied to preclude state judicial review of the merits of a federal constitutional claim. *Ford v. Georgia,* 498 U.S. 411, 424, 111 S.Ct. 850, 857–58, 112 L.Ed.2d 935 (1991).

■ The Supreme Court has recognized exceptions to the doctrine of procedural default where a federal habeas corpus petitioner can show "cause and actual prejudice" for his default or that failure to address the merits of his procedurally defaulted claim will work a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. at 750, 111 S.Ct. at 2565; *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). To establish "cause," a petitioner must show either that some objective external factor impeded the defense counsel's ability to comply with the state's procedural rules or that the petitioner's trial or

appellate counsel rendered ineffective assistance. *Coleman v. Thompson*, 501 U.S. at 753, 111 S.Ct. at 2566; *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (holding proof of ineffective assistance by counsel satisfies the "cause" prong of the exception to the procedural default doctrine).

 In order to satisfy the "miscarriage of justice" test, the petitioner must supplement his constitutional claim with a colorable showing of factual innocence. *Sawyer v. Whitley*, 505 U.S. 333, 335–36, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992). To satisfy the "factual innocence" standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *See Sawyer v. Whitley*, 505 U.S. at 335–40, 112 S.Ct. at 2517–19, (holding that to show "actual innocence" in the context of a capital sentencing scheme, one must show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state statute and that "factual innocence" means a fair probability that, in light of all the evidence, the trier of the facts would have entertained a reasonable doubt as to the defendant's guilt). In other words, to satisfy the "factual innocence" standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Id.* The "factual innocence" test, therefore, requires the Court to give consideration to the all of the evidence now available to the Court on the issue of the petitioner's guilt or innocence. The defendant must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would

have convicted him. *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).

### C. *Synthesis*

 In the course of his state habeas corpus proceeding, petitioner did "fairly present" a number of claims for relief to the Texas Court of Criminal Appeals.[10] However, petitioner has nonetheless presented this Court with several claims for relief which he failed to "fairly present" to the Texas Court of Criminal Appeals on either direct appeal or in his state habeas corpus proceeding. Among these unexhausted claims are petitioner's complaints that (1) there was insufficient evidence presented at trial to support his convictions (petitioner's first claim herein), (2) his constitutional right to a jury selected from a fair cross-section of the community was violated (petitioner's fourth claim herein), (3) his appellate counsel rendered ineffective assistance by failing to file a timely motion for new trial (included in petitioner's penultimate claim herein), and (4) the state intermediate court of appeals failed to address the merits of the points of error petitioner included in his *pro se* supplemental brief on direct appeal (petitioner's final claim herein). Respondent correctly argues petitioner has failed to "fairly present" these claims to the state courts and, thereby, procedurally defaulted on same. *Coleman v. Thompson*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1; *Hughes v. Dretke*, 412 F.3d 582, 595 (5th Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1347, 164 L.Ed.2d 60 (2006).

### IV. *Insufficient Evidence Claim*

### A. *The Claim*

In his first claim herein, petitioner argues there was legally insufficient evidence to support the jury's guilty verdicts.

---

**10.** *See* note 5, *supra*.

## B. *Procedural Default*

Respondent correctly points out that petitioner failed to present this same claim to the Texas Court of Criminal Appeals, either on direct appeal or in petitioner's state habeas corpus proceeding. Thus, petitioner procedurally defaulted on this unexhausted claim. *See Neville v. Dretke,* 423 F.3d 474, 480 (5th Cir.2005) (petitioner procedurally defaulted on unexhausted claim because Texas law [Article 11.071, § 5(a), Texas Code of Criminal Procedure] ordinarily bars presentation of a claim in a second or successive state writ application where the claim was available and could have been raised in the petitioner's initial state writ application); *West v. Johnson,* 92 F.3d 1385, 1398 n. 18 (5th Cir.1996) (holding a Texas petitioner who failed to present an insufficient evidence claim on direct appeal procedurally defaulted on same under applicable Texas law), *cert. denied,* 520 U.S. 1242, 117 S.Ct. 1847, 137 L.Ed.2d 1050 (1997).

## C. *No Merit*

■ Alternatively, petitioner's first claim is legally frivolous.[11] The applicable constitutional standard for evaluating the sufficiency of evidence supporting a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

At petitioner's trial, the complainant testified, in pertinent part, that (1) she had ridden home with the petitioner on at least two occasions without incident, (2) on three occasions in either late-November or early-December, 1999, when she was age thirteen, while giving her rides home following basketball games at her middle school, petitioner placed his hand inside her pants and inserted his finger inside her vagina, (3) she offered no resistance on any of the three occasions in question because petitioner was stronger than her, (4) following the first incident, petitioner directed her not to tell anyone what had happened, (5) she initially denied anything had happened when her mother and school principal confronted her, but (6) she did tell a school janitor whom she trusted what had happened.[12]

■ Petitioner's challenge to the sufficiency of the evidence supporting his convictions is little more than an assault upon his complainant's credibility. However, the appropriate sufficiency of evidence standard requires this Court to review the evidence supporting the jury's guilty verdict in the light *most favorable* to that verdict. The complainant's testimony, when viewed in the light most favorable to the jury's guilty verdicts, established petitioner intentionally penetrated the complainant's female sexual organ with his finger on three, separate, occasions while the complainant was under the age of fourteen.[13] Thus, there was more than legally

---

**11.** The AEDPA authorizes federal District Courts to deny relief on the merits notwithstanding the petitioner's failure to exhaust available state court remedies. *Neville v. Dretke,* 423 F.3d at 482; 28 U.S.C. § 2254(b)(2).

**12.** S.F. Trial, Volume 3 of 5, testimony of Nykesha Butler, at pp. 86–99, 111–22, 137, 143–50.

**13.** In pertinent part, at all times relevant to petitioner's offense, Section 22.021 of the Texas Penal Code defined the offense of aggravated sexual assault as including the intentional penetration of the female sexual organ of a victim younger than age fourteen.

sufficient evidence upon which to base the jury's guilty verdicts.

## V. *Confrontation Clause Claims*

### A. *The Claims*

In his second claim, petitioner argues the admission at both phases of trial of certain hearsay statements violated his Sixth Amendment right to confront adverse witnesses.

#### 1. *Larry Anderson's Hearsay Testimony Re Complainant*

The first of the two hearsay statements identified by petitioner as having been admitted during the guilt-innocence phase of trial was elicited not by the prosecution but, rather, by petitioner's own trial counsel during cross-examination of prosecution witness Larry Anderson. More specifically, petitioner's counsel inquired whether the complainant had told DPS investigator Anderson at the time she gave Anderson her statement that she "liked" what the petitioner had done to her.[14] The complainant subsequently testified at petitioner's trial that she had never told anyone she enjoyed what petitioner did to her.[15] Petitioner raised no timely objection to the testimony of Anderson or the complainant on this point.

Petitioner did not challenge the admission of Anderson's clearly hearsay testimony on direct appeal. During his state habeas corpus proceeding, petitioner did accuse his trial counsel of ineffective assistance for "failing to object to" the same hearsay testimony said counsel elicited

from Anderson on cross-examination. However, during his state habeas corpus proceeding petitioner did not directly challenge the trial court's admission of this same hearsay testimony as a part of petitioner's multifaceted "Confrontation Clause" claim.

#### 2. *Complainant's Hearsay Testimony Re Eugenia Evans*

The second hearsay statement petitioner identifies in his pleadings in this cause consisted of the complainant's unsolicited statement during her guilt-innocence phase trial testimony of a remark the complainant attributed to her middle school janitor, Eugenia Evans. More specifically, petitioner complains that the then–16–year–old complainant, during a lengthy, non-responsive, narrative on direct examination, volunteered the following testimony: "then Gina told me, well, I'm not going to say nothing if they don't ask me questions about it. Well, She had told me he was doing it to other girls."[16] Petitioner's trial counsel immediately asked to approach the bench and made a motion for mistrial.[17] The trial court excused the jury and the conference proceeded, during which the trial court repeatedly admonished the 16–year–old complainant not to discuss what others had told her.[18] While the trial court denied petitioner's motion for mistrial, it did instruct the jury on the record to disregard the complainant's last statement.[19] At no time during trial did the petitioner's trial counsel raise a Confrontation Clause objection to the admission of this hearsay testimony.

---

**14.** S.F. Trial, Volume 3 of 5, testimony of Larry M. Anderson, at pp. 29–30, 33.

**15.** S.F. Trial, Volume 3 of 5, testimony of Nykesha Butler, at pp. 148–50, 156.

**16.** S.F. Trial, Volume 3 of 5, testimony of Nykesha Butler, at p. 99.

**17.** *Id.,* at pp. 99–102.

**18.** *Id.,* at pp. 102–09.

**19.** *Id.,* at pp. 108–11.

On direct appeal, the Texas Fourth Court of Appeals held the trial court's instruction directing the jury to disregard the hearsay statement volunteered by the complainant was sufficient to cure any error which had occurred. Petitioner re-urged the same arguments as part of his state habeas corpus proceeding but the state trial court failed to address any portion of those claims directly.

### 3. *Michelle Sims' Hearsay Testimony Re Tammy Waters*

The final hearsay statement identified by petitioner in his pleadings in this Court was admitted over petitioner's hearsay objection during the testimony of prosecution witness Michelle Sims at the punishment phase of trial. More specifically, Sims testified that, in 1986 when she was a high school student, she and a friend named Tammy Waters stayed in a hotel room petitioner rented for them and, shortly after their second night at the hotel, Tammy Waters told her the petitioner had put his hand down Waters' pants.[20] The state trial court initially sustained petitioner's trial counsel's hearsay objection to this testimony but, subsequently admitted same under the "excited utterance" exception to the Hearsay Rule.[21] At no time did petitioner's trial counsel raise a Confrontation Clause objection to the admission of Michelle Sims' hearsay testimony.

On direct appeal, the Texas Fourth Court of Appeals held the trial court had not erred in admitting the hearsay testimony in question under the excited utterance exception. While petitioner presented the same complaint as part of his Confrontation Clause claim in his state habeas corpus proceeding, the state trial

court failed to address same on the merits.

### B. *Procedural Default*

Respondent correctly points out that petitioner raised no contemporaneous "Confrontation Clause" objection to the admission at trial of any of the three hearsay statements about which petitioner now complains. However, no Texas appellate court has ever held petitioner procedurally defaulted on those claims by failing to make a contemporaneous objection thereto. Thus, the failure of petitioner to make contemporaneous objections to any of the three hearsay statements in question does not bar federal habeas review of petitioner's Confrontation Clause claims herein.

Ordinarily, the federal procedural default doctrine applies only when the last state court to address a federal constitutional claim has applied state procedural default principles to preclude merits review; if the last state court to be presented with a particular claim reaches the merits, it removes any bar to federal-court review that might have been available. *Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991). Petitioner last presented his the final two portions of his Confrontation Clause herein to the state courts during his state habeas corpus proceeding and the Texas Court of Criminal Appeals disposed of petitioner's state habeas corpus application without any reference whatsoever to any rule of state procedural default. Under such circumstances, this Court finds no merit in respondent's procedural default defense to the latter two segments of petitioner's multi-faceted Confrontation Clause claim herein.

---

**20.** S.F. Trial, Volume 4 of 5, testimony of Michelle Sims, at pp. 11–25.

**21.** *Id.*, at pp. 14–24.

However, petitioner's complaints about the admission of the hearsay testimony of Larry Anderson have never been "fairly presented" to the Texas Court of Criminal Appeals. Petitioner failed to include that specific complaint in either his petition for discretionary review or in petitioner's state habeas corpus application. Therefore, the initial portion of petitioner's multi-faceted Confrontation Clause claim herein is unexhausted. For the reasons discussed in Sections III.C. and IV.B., petitioner procedurally defaulted on the unexhausted portion of his Confrontation Clause claim herein. *Coleman v. Thompson*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1; *Hughes v. Dretke*, 412 F.3d at 595.

### C. *Synthesis*

Petitioner's Confrontation Clause claims are premised on an overly-broad reading of the Supreme Court's opinion in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)(holding the Confrontation Clause bars the admission of *testimonial* statements where the declarant is unavailable and the defendant was unable to cross-examine the declarant) is distinguishable from petitioner's complaints about Larry Anderson's, the complainant's, and Michelle Sims' hearsay testimony. The Supreme Court made clear in *Crawford* that, as used in that opinion, the term "testimonial statements" applied to *ex parte* in-court testimony or its functional equivalent, such as affidavits, custodial examinations, depositions, and prior testimony that the defendant was unable to cross-examine. *Id.*, 541 U.S. at 51–52, 124 S.Ct. at 1364. There is no allegation before this Court that any of the three hearsay statements about which petitioner complains were made by their respective declarants during the course of a custodial interrogation or under any other circumstances which would render them "testimonial" for purposes of *Crawford's* holding.

Likewise, petitioner has utterly failed to allege any facts showing that any of the three declarants, with the possible exception of Tammy Waters (whom prosecutors represented to the state trial court was living somewhere in Florida at a location unknown to the prosecution at the time of petitioner's trial), was unavailable at the time of petitioner's trial. Thus, the holding in *Crawford* is inapplicable to petitioner's Confrontation Clause claims herein.

Insofar as petitioner complains about the admission of Larry Anderson's hearsay testimony, petitioner himself elicited that testimony and failed to fairly present the highest state appellate court with his Confrontation Clause complaint regarding that testimony. Under such circumstances, petitioner has procedurally defaulted on this unexhausted portion of his Confrontation Clause claim herein. This Court cannot grant federal habeas relief on an unexhausted claim. 28 U.S.C. § 2254(b)(1)(A). Moreover, because petitioner later confronted the complainant in open court about this very same hearsay statement attributed to her by Anderson, any Confrontation Clause complaint petitioner has over the admission of Anderson's hearsay testimony fails to rise above the level of harmless error. *See Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993)(holding the test for harmless error in a federal habeas corpus action brought by a state prisoner is "whether the error had substantial and injurious effect or influence in determining the jury's verdict").

■ Insofar as petitioner complains about the complainant's hearsay testimony attributing a statement to Eugenia Evans, petitioner ignores the fact the state trial court not only sustained petitioner's objection to this portion of the complainant's testimony but also directed the jury to

disregard same. Juries are presumed to follow their instructions. *See Zafiro v. United States,* 506 U.S. 534, 540–41, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993)(juries are presumed to follow their instructions). Accordingly, this aspect of petitioner's Confrontation Clause claim also fails to rise above the level of harmless error.

Finally, insofar as petitioner complains about the admission of Michelle Sims' hearsay testimony during the punishment phase of trial, petitioner's complaint is foreclosed by clearly established federal law. The Supreme Court has held admission of hearsay testimony does not offend the Sixth Amendment's Confrontation Clause provided the hearsay statements in question were made in contexts which provide substantial guarantees of their trustworthiness. *See White v. Illinois,* 502 U.S. 346, 355–57 & n. 8, 112 S.Ct. 736, 742–43 & n. 8, 116 L.Ed.2d 848 (1992)(holding the evidentiary rationale for permitting hearsay testimony regarding spontaneous declarations and statements made in the course of receiving medical care carry sufficient indicia of reliability to satisfy the Confrontation Clause); *Idaho v. Wright,* 497 U.S. 805, 820–21, 110 S.Ct. 3139, 3149–50, 111 L.Ed.2d 638 (1990)(recognizing that hearsay statements admitted under a "firmly rooted" hearsay exception, such as the excited utterance and dying declaration exceptions, possess particularized guarantees of trustworthiness which do not offend the guarantees of the Sixth Amendment's Confrontation Clause). Insofar as petitioner mounts a Confrontation Clause challenge to the admission of Michelle Sims' punishment-phase hearsay testimony regarding Tammy Waters' accusation against petitioner, petitioner's claim is foreclosed by the Supreme Court's holdings in *White* and *Wright.* The state appellate court reasonably concluded Sims' hearsay testimony was admitted under a hearsay exception the Supreme Court has twice held to be "firmly established" for Confrontation Clause purposes.

For the foregoing reasons, the Texas Court of Criminal Appeals' rejection on the merits of the exhausted portion of petitioner's Confrontation Clause claim herein was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in petitioner's state habeas corpus proceeding.

Furthermore, for the reasons set forth above, insofar as the state habeas court failed to address the merits of petitioner's Confrontation Clause claims herein, this Court independently concludes, after *de novo* review, that petitioner's Sixth Amendment Confrontation Clause rights were not violated by the admission of any of the hearsay testimony identified by petitioner in his pleadings in this cause.

## VI. Brady Claims

### A. The Claims

In his third claim for relief herein, petitioner argues the prosecution withheld from the defense a pair of documents in violation of the Supreme Court's holding in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). More specifically, petitioner identifies (1) an affidavit from MLK Middle School Principal Earl Bullock and (2) an affidavit from MLK Middle School Custodian Eugenia Evans which petitioner claims was in the custody of the prosecution but which was never tendered to petitioner's trial counsel. However, petitioner has failed to furnish this Court with a copy of either the purported affidavit from Principal Bullock or the purported affidavit of Eugenia Evans.

This Court's painstaking, independent, review of the records from petitioner's state habeas corpus proceeding disclosed no affidavit or other document executed by Principal Bullock and only an unsigned copy of an apparent draft statement containing redactions which might have been prepared for Ms. Evans' signature but which clearly bears no signature.[22]

The state trial court's Order of November 16, 2004 setting forth that court's findings of fact and conclusions of law in the course of petitioner's state habeas corpus proceeding erroneously refers to a "report of Principal Bullock to Assistant Superintendent Toni Thompson" concerning petitioner "which simply relates that the child complainant originally denied the penetration of her vagina by [petitioner's] finger to her mother, and later admitted it."[23] Apparently the report to which the state trial court referred, which appears among the records from petitioner's state habeas corpus proceeding, was dated October 5, 2000 and prepared by an investigator named Kenneth Hays.[24] While Principal Bullock is mentioned in the Hays report, he did not execute or sign same. Investigator Hays' report states, in pertinent part, that Principal Bullock reported (1) he had heard from a Coach Wilson that she had overheard unidentified female students indicating petitioner had a physical relationship with the complainant, (2) the complainant denied the allegation when Bullock confronted her, but (3) the complainant's mother subsequently telephoned Bullock to advise him

the complainant had admitted petitioner had engaged in improper sexual contact with her daughter.[25]

The state trial court's Order of November 16, 2004 setting forth that court's findings of fact and conclusions of law in the course of petitioner's state habeas corpus proceeding also refers to "an unsigned purported affidavit of one Eugenia Adams [sic] which supports the allegations of which [petitioner] was convicted."[26] The draft document, which was apparently prepared by a San Antonio Independent School District law enforcement officer, states that Evans reported (1) seeing petitioner giving the complainant a ride home on numerous occasions in his private vehicle and (2) the complainant informed Evans the petitioner had rubbed her leg and "fingered" her, and (3) the complainant informed Evans she had done nothing about it because she liked it.[27]

The state habeas trial court (1) found no evidence in the record suggesting the prosecution had access to either of these documents, (2) found neither document contained any exculpatory or mitigating information, and (3) concluded there was no *Brady* violation.[28]

**B. Clearly Established Federal Law**

 Few constitutional principles are more firmly established by Supreme Court precedent than the rule that " 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is

---

**22.** State Habeas Transcript, at p. 24. Petitioner's State Habeas Transcript is bereft of any affidavit or other document signed or executed by Principal Bullock. Petitioner did not append a copy of Principal Bullock's purported affidavit to any of his pleadings in this cause.

**23.** State Habeas Transcript, at p. 73.

**24.** State Habeas Transcript, at pp. 25–26.

**25.** State Habeas Transcript, at pp. 25–26.

**26.** State Habeas Transcript, at p. 73.

**27.** State Habeas Transcript, at p. 24.

**28.** State Habeas Transcript, at pp. 73–74.

material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Banks v. Dretke,* 540 U.S. 668, 691, 124 S.Ct. 1256, 1272, 157 L.Ed.2d 1166 (2004) (*quoting Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963)). The Supreme Court has consistently held that the prosecution's duty to disclose evidence material to either guilt or punishment, i.e., the rule announced in *Brady v. Maryland,* applies even when there has been no request by the accused. *Banks v. Dretke,* 540 U.S. at 690, 124 S.Ct. at 1272 (*quoting Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 l.Ed.2d 286 (1999)); *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). This duty applies to impeachment evidence. *Strickler v. Greene,* 527 U.S. at 280, 119 S.Ct. at 1948; *United States v. Bagley,* 473 U.S. 667, 676 & 685, 105 S.Ct. 3375, 3380 & 3385, 87 L.Ed.2d 481 (1985). The rule encompasses evidence known only to police investigators and not to the prosecutor. *Strickler v. Greene,* 527 U.S. at 280–81, 119 S.Ct. at 1948; *Kyles v. Whitley,* 514 U.S. 419, 438, 115 S.Ct. 1555, 1568, 131 L.Ed.2d 490 (1995). "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Strickler v. Greene,* 527 U.S. at 281, 119 S.Ct. at 1948 (*quoting Kyles v. Whitley,* 514 U.S. at 437, 115 S.Ct. at 1567).

 Under clearly established Supreme Court precedent, there are three elements to a *Brady* claim: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material," i.e., prejudice

must have ensued from its non-disclosure. *Banks v. Dretke,* 540 U.S. at 691, 124 S.Ct. at 1272; *Strickler v. Greene,* 527 U.S. at 281–82, 119 S.Ct. at 1948. Evidence is "material" under *Brady* where there exists a "reasonable probability" that had the evidence been disclosed the result at trial would have been different. *Banks v. Dretke,* 540 U.S. at 698–99, 124 S.Ct. at 1276.

The Supreme Court has emphasized four aspects of the *Brady* materiality inquiry. First, a showing of materiality does *not* require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted in the defendant's acquittal. *See United States v. Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383 (expressly adopting the "prejudice" prong of the *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), analysis of ineffective assistance claims as the appropriate standard for determining "materiality" under *Brady*). Second, the materiality standard is *not* a sufficiency of the evidence test. *Kyles v. Whitley,* 514 U.S. at 434–35, 115 S.Ct. at 1566. Third, once materiality is established, harmless error analysis has no application. *Kyles v. Whitley,* 514 U.S. at 435–36, 115 S.Ct. at 1566–67. Finally, materiality must be assessed collectively, not item by item. *Kyles v. Whitley,* 514 U.S. at 436–37, 115 S.Ct. at 1567.

### C. *Synthesis*

 Insofar as respondent argues there was no specific allegation or evidentiary showing that either of the documents was ever in the possession of prosecutors, respondent ignores the Supreme Court's clear holding in *Kyles v. Whitley.* *See Strickler v. Greene,* 527 U.S. at 280–81, 119 S.Ct. at 1948 (holding the rule in *Brady* encompasses evidence known only to police investigators and not to the prosecutor); *Kyles v. Whitley,* 514 U.S. at 438, 115 S.Ct.

at 1568 (holding the same). Both the Hays report summarizing Principal Bullock's statements and the report summarizing Custodian Evans' statements were prepared by investigators for the SAISD and, therefore, subject to the rule in *Brady* regardless of whether Bexar County prosecutors possessed personal knowledge of the existence or contents of same. The rule in *Brady* applies to all favorable, material information in the possession of any and all domestic law enforcement agencies. Thus, insofar as the state habeas court rejected petitioner's *Brady* claim on the theory Bexar County prosecutors had no obligation to disclose information contained in reports then-in-the-custody of SAISD law enforcement officers, that conclusion is at odds with clearly established federal law.

However, the Texas Court of Criminal Appeals' conclusion that neither of the documents in question contained any *material* evidence was eminently reasonable. The statements attributed to Principal Bullock contained in the Hays report and the statements attributed to Custodian Evans contained in the draft affidavit prepared by SAISD Detective Rodriguez were neither exculpatory nor mitigating in nature, nor possessing any additional, substantial, impeachment value. The complainant's testimony was consistent, for the most part, with the hearsay statements of Custodian Evans recorded in the draft affidavit prepared by detective Rodriguez. Principal Bullock's hearsay statements contained in the Hays report were consistent in all pertinent respects with the complainant's trial testimony, as well as the trial testimony of the complainant's mother.

Furthermore, the petitioner's trial counsel's cross-examination of prosecution witnesses Larry Anderson, David Johnson, Nykesha Butler, and Diana Butler reveal that said counsel were well aware (1) the complainant had initially denied anything improper occurred between her and the petitioner when she was confronted by Principal Bullock and her own mother and (2) of the allegations the complainant had told others she had "liked" what petitioner had done to her. Thus, petitioner has failed to allege any specific facts showing that his trial counsel was unaware of the *information* contained in the hays report and draft Evans affidavit at the time of petitioner's trial. Petitioner misconstrues the nature of the rule in *Brady*. The holding in *Brady* is not analogous to a duty to furnish discovery in a civil litigation context. Rather, *Brady* imposes a duty of disclosure with regard to *information*, regardless of what form that information might assume, when that information is favorable, i.e., exculpatory, mitigating, or impeaching in nature, and "material" as defined by *Brady* and its progeny. Given the obvious pretrial knowledge of petitioner's trial counsel of all relevant facts contained in either the Hays report or Detective Rodriguez's draft affidavit for Custodian Evans, there is no reasonable probability disclosure to petitioner's trial counsel of either or both the reports in question would have made any difference to the outcome of either phase of petitioner's trial.

The Texas Court of Criminal Appeals' rejection on the merits of petitioner's *Brady* claims was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in petitioner's state habeas corpus proceeding.

## VII. *Fair Cross–Section Claim*

Petitioner complains in this Court that he was denied the opportunity to select a

jury from a fair cross-section of the community because there was only one black person on his jury venire. As explained in Section III.C. above, petitioner failed to exhaust available state court remedies on this complaint and, thereby, procedurally defaulted on same.

Moreover, even when reviewed on the merits *de novo,* petitioner's fair cross-section complaint is legally frivolous. Petitioner erroneously styles this complaint as a claim for relief under the Supreme Court's holding in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* dealt with the allegedly discriminatory use of peremptory challenges by a prosecutor in a criminal trial and is irrelevant to petitioner's complaint that only one person in the seventy-five who appeared on his jury venire was Black.

■ The Sixth Amendment guarantees a criminal defendant the right to have his or her jury chosen from a venire or panel representing a fair cross-section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 527–30, 95 S.Ct. 692, 696–97, 42 L.Ed.2d 690 (1975). The Supreme Court reached its holding in *Taylor* by recognizing: (1) "the Sixth Amendment's provision for jury trial is made binding on the States by virtue of the Fourteenth Amendment" (*Taylor v. Louisiana,* 419 U.S. at 526, 95 S.Ct. at 696); (2) "the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community" (*Id.,* 419 U.S. at 527, 95 S.Ct. at 696); (3) the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial (*Id.,* 419 U.S. at 528, 95 S.Ct. at 697). Interestingly, the Supreme Court cited a long line of its equal protection cases outlawing the purposeful exclusion of racial and ethnic groups from service on grand and petit juries in support of its interpretation of the Sixth Amendment's fair cross-section requirements. The Supreme Court has acknowledged that its holding in *Taylor* announced a new rule of constitutional criminal procedure. *Taylor v. Louisiana,* 419 U.S. at 535–36, 95 S.Ct. at 700 ("until today no case had squarely held that the exclusion of women from jury venires deprives a criminal defendant of his Sixth Amendment right to trial by an impartial jury drawn from a fair cross section of the community.").

The fair cross-section requirement exists separate and apart from either of the Equal Protection rights recognized in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), or in the long line of Supreme Court opinions discussed above in Section III.D.2.a. *See Holland v. Illinois,* 493 U.S. 474, 478–83, 110 S.Ct. 803, 806–08, 107 L.Ed.2d 905 (1990) (distinguishing the principles governing the Supreme Court's equal protection case law forbidding the systematic discriminatory exclusion of identifiable groups from grand juries and petit jury venires from the Sixth Amendment's fair cross-section of the community requirement and holding that the latter did not prohibit the use of peremptory challenges in an allegedly racially discriminatory manner akin to the Equal Protection Clause's prohibition recognized in *Batson* ).

The Supreme Court has repeatedly refused to extend the Sixth Amendment's fair cross-section requirement to the selection of a petit jury once a jury panel or venire has been constituted that satisfies this requirement. *See Holland v. Illinois,* 493 U.S. at 486–87, 110 S.Ct. at 810–11 (holding the Sixth Amendment's fair cross-section requirement does not mirror the Equal Protection Clause's proscription against racial discrimination in the exercise of peremptory challenges); *Teague v.*

*Lane,* 489 U.S. at 314–15, 109 S.Ct. at 1077–78 (recognizing the denial of the right to a fair cross-section of the community in a jury venire does not undermine the fundamental fairness that must underlie a criminal conviction); *Lockhart v. McCree,* 476 U.S. 162, 173, 106 S.Ct. 1758, 1765, 90 L.Ed.2d 137 (1986) ("We have never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large.").

■ A criminal defendant has standing to challenge an exclusion resulting in a violation of the fair-cross-section requirement, whether or not he is a member of the excluded class. *Duren v. Missouri,* 439 U.S. 357, 359 n. 1, 99 S.Ct. 664, 666 n. 1, 58 L.Ed.2d 579 (1979); *Taylor v. Louisiana,* 419 U.S. at 526, 95 S.Ct. at 695–96. The Supreme Court has emphasized its construction of the Sixth Amendment does not deprive the States of the opportunity to grant exemptions from jury service in cases of special hardship or incapacity or to persons engaged in particular occupations whose uninterrupted performance of their duties is critical to the community's welfare. *See Taylor v. Louisiana,* 419 U.S. at 534, 95 S.Ct. at 700 ("States are free to grant exemptions from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare."); *Id.,* 419 U.S. at 538, 95 S.Ct. at 701 ("States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community.").

In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. at 364, 99 S.Ct. at 668.

■ The fundamental deficiency in petitioner's "fair cross-section" claim herein is that petitioner has alleged absolutely no specific facts showing the under-representation of Blacks on his particular jury venire was the result of any systematic exclusion of Blacks from petit jury service in Bexar County. In fact, petitioner has failed to allege any specific facts showing that any jury venire in the history of Bexar County, other than his own, has ever included a statistically significant under-representation of Blacks or that such under-representation resulted from any cause other than pure statistical anomaly.

## VIII. *Admission of Hearsay Evidence*

### A. *The Claims*

Petitioner argues in his fifth claim herein that the state trial court abused its discretion when it admitted evidence of multiple extraneous acts of misconduct by petitioner during the guilt-innocence phase of trial despite the fact the trial court had previously granted petitioner's motion in limine on such evidence. In his sixth claim, petitioner once again argues the state trial court erred in admitting Michelle Sims' hearsay testimony during the punishment phase of trial.

## B. *Procedural Default on Unexhausted Federal Theory*

In the course of petitioner's direct appeal, the Texas Fourth Court of Appeals concluded (1) petitioner procedurally defaulted on any complaint about the manner in which the trial court enforced its ruling on petitioner's motion in limine by immediately moving for mistrial every time there was a breach of the trial court's ruling on the motion in limine, instead of first requesting a jury instruction to disregard the offending testimony, (2) the trial court's instruction directing the jury to disregard the complainant's volunteered hearsay testimony regarding Eugenia Evans' comment about other girls whom petitioner had allegedly molested was sufficient to cure any error arising from that incident, and (3) the trial court properly admitted Michelle Sims' hearsay testimony regarding Tammy waters' outcry statement under the excited utterance exception to the Hearsay Rule. *Mass v. State*, no. 04–02–00636–CR (Tex.App.—San Antonio March 24, 2004), slip op. at pp. 2–7.

 Insofar as petitioner argues the admission of any of the hearsay testimony in question violated state evidentiary rules, that complaint, standing alone, does not furnish a basis for federal habeas corpus relief. Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991)(holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990) (recognizing that federal habeas relief will not issue for errors of state law);

*Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984)(holding a federal court may not issue the writ on the basis of a perceived error of state law). In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does *not* sit as a super-state appellate court. *Estelle v. McGuire*, 502 U.S. at 67–68, 112 S.Ct. at 480; *Lewis v. Jeffers*, 497 U.S. at 780, 110 S.Ct. at 3102; *Pulley v. Harris*, 465 U.S. at 41, 104 S.Ct. at 874. "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. at 730, 111 S.Ct. at 2554. Thus, even if petitioner established the trial court erroneously applied Texas evidentiary rules during petitioner's trial, that fact would not, standing alone, establish a violation of petitioner's federal constitutional rights.

Petitioner raised these same complaints on direct appeal as purely state-law complaints. While petitioner's appellant's brief did include citations to a trio of United States Supreme Court opinions, at no point in his brief on direct appeal did petitioner "fairly present" the state intermediate appellate court with any argument suggesting the admission of the hearsay statements in question violated any provision of the federal Constitution. On the contrary, the only citations to federal authority contained in petitioner's brief on direct appeal addressed the potential application of state harmless error principles. There was simply nothing in petitioner's appellant's brief on direct appeal which even remotely alerted, much less fairly advised, the state appellate court that peti-

tioner was asserting a *federal* constitutional claim arising from the admission of the hearsay testimony in question. Furthermore, petitioner did not re-urge these same complaints as federal constitutional claims in the course of his state habeas corpus proceeding. For these reasons, insofar as petitioner now attempts to put a federal constitutional "gloss" or "spin" on what are little more than complaints of alleged violations of state evidentiary and procedural rules, such attempts are unexhausted and procedurally defaulted. *See Baldwin v. Reese,* 541 U.S. at 29–33, 124 S.Ct. at 1349–51 (to have "fairly presented" his *federal* claim, the petitioner must have reasonably alerted the state courts to the *federal* nature of his complaint); *Wilder v. Cockrell,* 274 F.3d at 260 ("A fleeting reference to the federal constitution, tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights.").

## C. *No Merit to Federalized Claims*

█ Alternatively, petitioner's complaints about the admission of hearsay evidence regarding allegations of extraneous misconduct by petitioner (in violation of the trial court's favorable ruling on petitioner's motion in limine) do not furnish a basis for federal habeas relief.

█ When a state court admits evidence that is so unduly prejudicial it renders the trial fundamentally unfair, the Fourteenth Amendment's Due Process Clause provides a mechanism for relief. *Dawson v. Delaware,* 503 U.S. 159, 179, 112 S.Ct. 1093, 1105, 117 L.Ed.2d 309 (1992); *Payne v. Tennessee,* 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991); *Darden v. Wainwright,* 477 U.S.

168, 179–83, 106 S.Ct. 2464, 2470–72, 91 L.Ed.2d 144 (1986); *Bigby v. Dretke,* 402 F.3d 551, 563 (5th Cir.2005), *cert denied,* —— U.S. ——, 126 S.Ct. 239, 163 L.Ed.2d 221 (2005).

The trial court's admission during the guilt-innocence phase of trial of hearsay testimony regarding allegations of extraneous misconduct by petitioner did not render petitioner's trial fundamentally unfair. The state trial court gave a very broad curative instruction during the guilt-innocence phase of trial directing the jury to disregard any and all testimony concerning allegations of improper conduct by petitioner other than those relating directly to the complainant's accusations charged in the indictment in that case.[29] Juries are presumed to follow such instructions. *Zafiro v. United States,* 506 U.S. at 540–41, 113 S.Ct. at 939.

Likewise, the trial court's admission of hearsay testimony during the punishment phase of trial regarding allegations of extraneous misconduct by petitioner did not violate federal constitutional principles. As explained above, Michelle Sims' punishment-phase hearsay testimony was admitted under a well-settled exception to the Hearsay Rule for excited utterances. Furthermore, it is constitutionally permissible to admit evidence of unadjudicated, extraneous criminal conduct during the punishment phase of a criminal trial. *Brown v. Dretke,* 419 F.3d 365, 376 (5th Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 1434, 164 L.Ed.2d 137 (2006); *Hughes v. Dretke,* 412 F.3d 582, 593 (5th Cir.2005)("the Supreme Court has never held that the federal constitution requires a state to prove an extraneous offense beyond a reasonable doubt"), *cert. denied,* —— U.S. ——, 126 S.Ct. 1347, 164 L.Ed.2d 60 (2006). Neither does the Constitution require unadju-

---

29. S.F. Trial, Volume 3 of 5, at p. 110.

dicated extraneous offenses be proved beyond a reasonable doubt for evidence of those offenses to be admitted at trial. *See Brown v. Dretke*, 419 F.3d at 376–77 (the Constitution does not require the defendant's commission of unadjudicated extraneous offenses be proven beyond a reasonable doubt before evidence of same may be admitted at a capital trial's punishment phase); *Harris v. Cockrell*, 313 F.3d 238, 246 (5th Cir.2002)(the introduction of evidence of extraneous offenses, even those of which the defendant has been acquitted, does not violate due process and there is no constitutional requirement that extraneous offenses offered at the punishment phase of a capital trial be proven beyond a reasonable doubt), *cert. denied*, 540 U.S. 1218, 124 S.Ct. 1503, 158 L.Ed.2d 152 (2004).

Accordingly, petitioner's fifth and sixth claims herein do not warrant federal habeas relief.

## IX. *Ineffective Assistance Claims*

### A. *The Claims*

In his seventh, eighth, and ninth claims herein, petitioner argues his trial counsel rendered ineffective assistance by failing to (1) move to strike a biased member of the jury venire who ultimately served on petitioner's petit jury, (2) request that the trial court instruct the jury to disregard hearsay statements regarding extraneous misconduct by petitioner mentioned by prosecution witnesses in violation of the trial court's favorable ruling on petitioner's motion in limine, and (3) adequately investigate the case against petitioner and present available documentary evidence showing petitioner was not assigned to the MLK campus on the dates of the alleged offenses contained in the indictment. In his penultimate and final claims herein, petitioner argues his appellate counsel rendered ineffective assistance by failing to (1) file a timely motion for new trial, (2)

file a timely appellant's brief, and (3) assert each of the points of error contained in petitioner's *pro se* supplemental appellant's brief.

### B. *The Constitutional Standard*

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of *trial* counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

■■■ To satisfy the first prong of *Strickland*, i.e., establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assis-

tance. *Strickland v. Washington*, 466 U.S. at 687–91, 104 S.Ct. at 2064–66. Courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight. *See Wiggins v. Smith*, 539 U.S. at 523, 123 S.Ct. at 2536 (holding the proper analysis under the first prong of *Strickland* is an objective review of the reasonableness of counsel's performance under prevailing professional norms which includes a context-dependent consideration of the challenged conduct as seen from the perspective of said counsel at the time). It is strongly presumed counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066.

▮▮▮▮ To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542; *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.* In evaluating prejudice, a federal habeas court must re-weigh the evidence in aggravation against the totality of available mitigating evidence. *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542.

In evaluating petitioner's complaints about the performance of his counsel under the AEDPA, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded petitioner's complaints about his trial counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir.2003), *cert. denied*, 540 U.S. 1154,

124 S.Ct. 1156, 157 L.Ed.2d 1050 (2004). In making this determination, this Court must consider the underlying *Strickland* standard. *Id.* In those instances in which the state courts failed to adjudicate either prong of the *Strickland* test, this Court's review of the un-adjudicated prong is *de novo. See Rompilla v. Beard*, 545 U.S. 374, ——, 125 S.Ct. 2456, 2467, 162 L.Ed.2d 360 (2005)(holding *de novo* review of the prejudice prong of *Strickland* was required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins v. Smith*, 539 U.S. at 534, 123 S.Ct. at 2542 (holding the same).

Applying the AEDPA's standard of review, the issue before this Court is whether the Texas Court of Criminal Appeals could *reasonably* have concluded that petitioner's complaints about his trial counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle v. Cockrell*, 343 F.3d at 444. In making this determination, this Court must consider the underlying *Strickland* standard. *Id.*

### C. Complaints About Trial Counsel

#### 1. State Court Disposition

In the course of petitioner's state habeas corpus proceeding, the state habeas trial (1) found petitioner's trial counsel objected to each instance of hearsay testimony identified by petitioner in his state habeas pleadings and consistently moved for mistrial, (2) found, on the fifth such occasion, petitioner's trial counsel also requested the trial court instruct the jury to disregard the hearsay offered by the complainant and the trial court gave such an instruction, and (3) concluded petitioner's trial counsel had not rendered ineffective assis-

tance.[30]

The state habeas trial court did not address petitioner's "fairly presented" complaints that his trial counsel failed to (1) move to strike venire member Roger Arias, whom petitioner alleges was biased against law enforcement officers and admitted during voir dire he could not properly consider the full range of punishment, i.e., probation, for offenses of the nature with which petitioner had been charged and (2) investigate and present available evidence showing petitioner was not assigned to the MLK Middle School Campus in November and December, 1999. Nonetheless, the Texas Court of Criminal Appeals' denial of petitioner's state habeas corpus application necessarily denied all of petitioner's "fairly presented" ineffective assistance claims "on the merits." *See Salazar v. Dretke*, 419 F.3d 384, 395 (5th Cir.2005)("In the context of federal habeas corpus proceedings, adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive as opposed to procedural."), *cert. denied*, —— U.S. ——, 126 S.Ct. 1467, 164 L.Ed.2d 252 (2006); *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir.2003)(holding the same), *cert. denied*, 540 U.S. 1163, 124 S.Ct. 1170, 157 L.Ed.2d 1208 (2004); *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir.2002)(holding the same), *cert. denied*, 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003). Thus, the question before this Court is whether the state habeas court could reasonably have concluded that each of petitioner's complaints about the performance of his trial counsel failed to satisfy one of the two prongs of the *Strickland* test. *Schaetzle v. Cockrell*, 343 F.3d at 444.

## 2. *Failure to Strike a "Biased" Juror*

### a. *State Court Proceedings*

During the general voir dire portion of petitioner's trial, venire member number 44, Roger Arias, twice raised his hand in response to questions directed to the venire panel. When the group was asked generically by the prosecutor whether the venire members' dealings with police officers would cause them to give a witness more credibility simply because that witness was a police officer, Arias responded that his cousin had been killed by a police officer.[31] Later, when the panel members were questioned by petitioner's trial counsel as to whether the fact a witness was a teacher would have any impact on his evaluation of that witness' credibility, Arias responded negatively.[32] Finally, when questioned by petitioner's trial counsel, Arias indicated he was having an "extremely difficult" time imagining circumstances under which he could grant probation to a person convicted of the offenses with which petitioner was charged.[33] After the first and third of these exchanges, the interrogating attorneys indicated on the record that further examination of Arias might be necessary. Inexplicably, however, when the trial court, prosecution, and petitioner's trial counsel undertook individual voir dire of those members of the venire panel whom the parties considered potentially subject to a challenge for cause, Arias was not called for individual examination. The record before this Court is bereft of any explanation for this glaring omission.

The state habeas court did not afford petitioner an evidentiary hearing to develop the factual bases for petitioner's ineffec-

---

**30.** State Habeas Transcript, at pp. 72–74.

**31.** S.F. Trial, Volume 2 of 5, at pp. 61 & 67.

**32.** *Id.*, at p. 109.

**33.** *Id.*, at pp. 142–43.

tive assistance claims. Neither party furnished the state habeas court with any affidavits from petitioner's trial counsel or other evidence suggesting petitioner's trial counsel's decision not to move to strike venire member Arias was the product of any intelligible trial strategy. Furthermore, when petitioner complained in his state habeas corpus proceeding about his trial counsel's failure to move to strike Arias for cause, the state habeas trial court made no factual findings or conclusions of law addressing this aspect of petitioner's ineffective assistance claim.

### b. *No Deficient Performance*

Petitioner argues Arias was "biased" because Arias indicated an antipathy toward law enforcement personnel (petitioner was a former police officer) and an unwillingness to consider probation as a sentence for the offenses with which petitioner was charged.

As to the first of these contentions, the specific questions directed to the jury venire dealt with whether the venire members believed their evaluation of a person's credibility would be affected by that person's status as a police officer. Arias' statement that his cousin had been killed by a police officer was never followed up by either party or the trial court with further interrogation concerning how that fact would impact Arias' ability to evaluate the credibility of a trial witness who happened to be a law enforcement officer. Significantly, Arias never indicated that the circumstances of his cousin's death would render him more likely or less likely to vote to convict a law enforcement officer accused of a criminal offense.

Even more significantly, it is difficult to imagine how Arias' potential bias against the credibility of a law-enforcement-officer witness could have harmed petitioner. Two of the prosecution's four witnesses at

the guilt-innocence phase of trial were law enforcement officers. Two of the prosecution's eight witnesses at the punishment phase of trial were then-current or former law enforcement officers. In contrast, none of the petitioner's witnesses at either phase of trial were law enforcement officers and the petitioner (himself a former police officer) never took the stand to testify at trial. Under these circumstances, there is no reasonable probability Arias' allegedly negative attitude toward the credibility of law enforcement officers, or Arias' allegedly negative attitude toward law enforcement officers generally, had any impact on Arias' deliberations during either phase of petitioner's trial. In sum, petitioner's first complaint of alleged bias on Arias' part is without factual foundation in the record now before this Court. Therefore the failure of petitioner's trial counsel to move to strike Arias for cause on the basis of such purported bias was objectively reasonable.

Arias' professed difficulty imagining any circumstances in which he could vote to sentence a person convicted of petitioner's offenses to a probated sentence is a more difficult question. A demonstrated inability or refusal on Arias' part to consider the full range of punishment applicable to a particular offense might very well have rendered Arias subject to a valid challenge for cause. However, neither party nor the trial court made any effort to follow up on Arias' rather vague initial expression of his reservations over imposing a probated sentence for the offenses with which petitioner was charged. Petitioner presented the state habeas court with no fact-specific allegations, much less any evidence, showing that Arias' initial reservations about imposing a probated sentence for aggravated sexual assault of a child were sufficiently strong so as to preclude him from even considering the possibility of impos-

ing a probated sentence on a person convicted of such an offense. Thus, it is far from clear under the record now before this Court whether Arias' expressed reservations about granting a probated sentence were so substantial as to preclude him from even considering the possibility of imposing a probated sentence in petitioner's case.

Petitioner offered the state habeas court no affidavit from Arias or any other evidence suggesting Arias would have refused to comply with a trial court punishment-phase jury instruction directing the jury to consider the possibility of imposing a probated sentence in petitioner's case. A venire member's expression of reluctance to impose a particular type of sentence for a specific offense in the abstract does not necessarily equate with an inability to consider the imposition of the full range of punishment available for that offense. Rather, the question is whether the venire member's personal views are such that he or she is unable to follow the trial court's jury instructions. The Supreme Court's opinions addressing the exclusion of potential jurors from capital murder trials illustrates this point.

In *Witherspoon v. Illinois*, 391 U.S. 510, 521–23, 88 S.Ct. 1770, 1776–77, 20 L.Ed.2d 776 (1968), the Supreme Court held that prospective jurors may not be excused from sitting on a capital jury simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. Rather, the Supreme Court held as follows:

The most that can be demanded of a venireman in this regard is that he be willing to consider all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty regardless of the facts and circumstances that might emerge in the course of the proceedings.

*Witherspoon v. Illinois*, 391 U.S. at 522 n. 21, 88 S.Ct. at 1777 n. 21.

In *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), the Supreme Court emphasized the limitations *Witherspoon* imposed on the ability of the State to exclude members of a jury venire from service on a petit capital jury and directly addressed jury selection in Texas capital murder trials:

a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. The State may insist, however, that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court.

*Adams v. Texas*, 448 U.S. at 45, 100 S.Ct. at 2526. The Supreme Court went on in *Adams* to discuss the many practical consequences of its *Witherspoon* holding:

If the juror is to obey his oath and follow the law of Texas, he must be willing not only to accept that in certain circumstances death is an acceptable penalty but also to answer the statutory questions without conscious distortion or bias. The State does not violate the *Witherspoon* doctrine when it excludes prospective jurors who are unable or unwilling to address the penalty questions with this degree of impartiality. * * *

[A] Texas juror's views about the death penalty might influence the manner in which he performs his role but without exceeding the "guided jury discretion" permitted him under Texas law. In such circumstances, he could not be excluded consistently with *Witherspoon*.

The State could, consistently with *Witherspoon*, use § 12.31(b) to exclude prospective jurors whose views on capital punishment are such as to make them unable to follow the law or obey their oaths. But the use of § 12.31(b) to exclude jurors on broader grounds based on their opinions concerning the death penalty is impermissible. * * *

[N]either nervousness, emotional involvement, nor inability to deny or confirm any effect whatsoever is equivalent to an unwillingness or an inability on the part of the jurors to follow the court's instructions and obey their oaths, regardless of their feelings about the death penalty. * * * Nor in our view would the Constitution permit the exclusion of jurors from the penalty phase of a Texas murder trial if they aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond a reasonable doubt, but not otherwise, yet who frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt. * * * [T]he State may bar from jury service those whose beliefs about capital punishment would lead them to ignore the law or violate their oaths.

*Adams v. Texas*, 448 U.S. at 46–50, 100 S.Ct. at 2527–29 (citations omitted).

In *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the Supreme Court further clarified its holdings in *Witherspoon* and *Adams*, holding that the proper inquiry when faced with a venire member who expresses personal, conscientious, or religious views on capital punishment is "whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id.*, 469 U.S. at 424, 105 S.Ct. at

852. In *Witt*, the Supreme Court also emphasized that considerable deference is to be given the trial court's first-hand evaluation of the potential juror's demeanor and that no particular magical incantation or word choice need necessarily be followed in interrogating the potential juror in this regard. *Id.*, 469 U.S. at 430–35, 105 S.Ct. at 855–58.

Petitioner failed to present the state habeas court with any fact-specific allegations, much less any evidence, showing that Arias' personal reservations about imposing a probated sentence were so strong that Arias would have been unable or unwilling to follow the trial court's punishment-phase jury instructions and at least consider the possibility of imposing a probated sentence in petitioner's case.

■■■ Under such circumstances, petitioner has failed to overcome the presumption that petitioner's trial counsel's decision not to challenge Arias for cause fell within the broad range of objectively reasonable professional discretion. *See Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066 (holding it is strongly presumed counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment).

This same presumption of objective reasonableness applies to the decision by petitioner's trial counsel not to strike Arias peremptorily. In fact, petitioner does not allege any specific facts establishing (1) whether his trial counsel had any peremptory strikes available to employ against Arias or (2) his trial counsel's exercise of available peremptory strikes was objectively unreasonable. This Court has noted on many previous occasions that the selection of a jury is more art than science. *Martinez v. Dretke*, 426 F.Supp.2d 403, 461 (W.D.Tex.2006); *Salazar v. Dretke*, 393 F.Supp.2d 451, 495 (W.D.Tex.2005);

*Cordova v. Johnson,* 993 F.Supp. 473, 530 (W.D.Tex.1998), *appeal denied,* 157 F.3d 380 (5th Cir.1998), *cert. denied,* 525 U.S. 1131, 119 S.Ct. 922, 142 L.Ed.2d 971 (1999).

The informed exercise of peremptory challenges involves consideration of myriad factors, including a trial counsel's assessment of the critical factual disputes which the jury must resolve, the likelihood individual venire members' life experiences and non-disqualifying biases will cause them to be favorably or unfavorably disposed toward a particular side, and similar factors. Trial counsel must base decisions on whether to employ peremptory challenges against a particular venire member not only upon that particular venire member's demeanor and answers to voir dire questions but also upon how that venire member's answer and demeanor during voir dire compared with those of other members of the jury venire. By its nature, jury selection is a highly intuitive process. Exercising peremptory challenges in a criminal trial is most often a process of seeking to eliminate those members of the jury venire whom defense counsel perceives to be more hostile to the defense than the remaining members of the jury venire. Particularly when the offense charged is a heinous one, jury selection in a criminal trial may be little more than a series of choices between the lesser of two or more unpalatable alternatives. Petitioner herein has failed to allege any specific facts showing that it was objectively unreasonable for petitioner's trial counsel to believe Arias was more unfavorably disposed toward the defense than any of the jury venire members against whom petitioner's trial counsel did exercise peremptory challenges. As such, petitioner has not alleged any specific facts establishing that the manner with which his trial counsel exercised the defense's allotment of peremptory strikes was, un-der the circumstances of petitioner's trial, objectively unreasonable.

Given the record now before this Court, which is virtually barren of any fact-specific allegations, much less evidence, showing either (1) Arias was subject to a proper challenge for cause or (2) the decision by petitioner's trial counsel not to strike Arias was anything other than a strategic decision intended to obtain as favorable a petit jury for petitioner as possible, petitioner's complaints about his trial counsel's failure to challenge Arias ro cause or strike Arias peremptorily fail to satisfy the first prong of *Strickland,* i.e., there is no showing those failures caused the performance of petitioner's trial counsel to fall outside the broad range of objectively reasonable professional legal representation.

### c. *No Prejudice*

#### (1) *Guilt–Innocence Phase*

Moreover, as respondent correctly points out, there were no fact-specific allegations, much less any documents or other evidence, before the state habeas court showing petitioner was "prejudiced" within the meaning of *Strickland* by his trial counsel's failure to either challenge Arias for cause or strike Arias peremptorily.

At the guilt-innocence phase of trial, the prosecution presented the testimony of the complainant and her mother, as well as testimony from two law enforcement officers who had investigated the charges against petitioner. Beyond cross-examination of the prosecution's witnesses, the only other defense evidence offered at the guilt-innocence phase of trial consisted of testimony from a teacher challenging the complainant's reputation for veracity. Because petitioner chose not to testify during the guilt-innocence phase of trial, any potential bias Arias might have possessed against the credibility of law enforcement

officers' testimony most certainly had no negative impact on petitioner at that phase of trial. Petitioner offered the jury no alibi evidence nor any other evidence suggesting the applicability of any affirmative defense to the charges against him. The critical issue presented to the jury during the guilt-innocence phase of trial was the complainant's credibility. The only testimony from law enforcement personnel during the guilt-innocence phase of trial established the undisputed facts that (1) the complainant gave law enforcement officers a statement alleging petitioner had sexually assaulted her on three, separate, occasions and (2) SAISD police officers are required by district policy to have a second officer with them in their vehicle when they transport female students. Neither of these matters were in genuine dispute at any time during petitioner's trial.

 Simply put, petitioner has failed to allege any specific facts showing Arias possessed any bias which might have negatively impacted the defense during the jury's deliberations at the guilt-innocence phase of petitioner's trial. Under such circumstances, there is no reasonable probability that, but for the failure of petitioner's trial counsel to challenge Arias for cause or to strike Arias peremptorily, the outcome of the guilt-innocence phase of petitioner's trial would have been different.

### (2) Punishment Phase

 To establish prejudice under *Strickland* in the context of a non-capital sentencing proceeding, a state prisoner seeking federal habeas relief in this Circuit must establish a reasonable probability that, but for the deficient conduct of his trial counsel, petitioner would have received a "significantly less harsh" sentence. *See Ward v. Dretke,* 420 F.3d 479, 498–99 (5th Cir.2005)(distinguishing *Glo-*

*ver v. United States,* 531 U.S. 198, 202–04, 121 S.Ct. 696, 700–01, 148 L.Ed.2d 604 (2001)("any amount of actual jail time has Sixth Amendment significance")), *cert. denied,* —— U.S. ——, 126 S.Ct. 1621, 164 L.Ed.2d 334 (2006); *Miller v. Dretke,* 420 F.3d 356, 364–66 (5th Cir.2005)(similarly distinguishing *Glover* and applying the "significantly less harsh" standard for *Strickland* "prejudice" review); *Spriggs v. Collins,* 993 F.2d 85, 88 (5th Cir.1993)(applying the "significantly less harsh" standard for evaluating *Strickland* prejudice in the context of a non-capital sentencing proceeding). In making such an evaluation, the federal habeas court must consider such factors as the defendant's actual sentence, the potential minimum and maximum sentences which could have been imposed, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances. *Ward v. Dretke,* 420 F.3d at 498.

 Insofar as petitioner argues Arias' bias against a probated sentence resulted in petitioner receiving a longer sentence than petitioner would otherwise have received, petitioner's argument ignores the fact his jury imposed probated sentences on two of the three offenses for which petitioner was convicted. Moreover, given the repeated nature of petitioner's offenses, the tender age of his victim, and the other evidence presented during petitioner's trial, the 15–year sentence petitioner received was remarkably lenient. The trial court instructed the petitioner's jury at the punishment phase of trial that the range of potential sentences which could be imposed on petitioner stretched from life imprisonment to a term of imprisonment of not less than five years *for each offense* and a fine of not more than ten

thousand dollars *for each offense.*[34]

The testimony admitted during the punishment phase of petitioner's trial established (1) in 1986, the petitioner took a pair of teenage girls to a hotel room which he had rented and petitioner spent at least one night at the hotel room with the girls,[35] (2) following an investigation into that incident, petitioner was terminated from his employment as a police officer with the City of Converse,[36] (3) in 1996, petitioner accompanied an apparently high, female, sixth grader to her home at 3 a.m.,[37] (4) petitioner was subsequently disciplined by the SAISD for his involvement in an altercation with a San Antonio Police Officer relating to that incident,[38] (5) in 2001, petitioner was terminated from his employment with the SAISD for failing to disclose relevant information on his employment application and using poor judgment in dealing with juvenile females,[39] and (6) during his period of employment with the SAISD, several school personnel observed multiple incidents in which petitioner engaged in inappropriate behavior with female students.[40] Significantly, at

---

34. Trial Transcript, at p. 47.

35. Michelle Sims testified (1) while in the uniform of a Converse police officer, the petitioner approached the then–17–year–old Sims and her friend Tammy Waters at a convenience store and inquired as to their age and the reason they were not in school, (2) petitioner later returned to the store in his private vehicle and drove the two girls to a nearby motel, (3) petitioner rented a room for the girls and brought them food, (4) the second night the girls were at the hotel, the petitioner stayed with them, (5) the following morning, petitioner drove the girls to a residence on east side of San Antonio, (6) after the petitioner left them at the east side residence, a frightened Tammy Waters informed Sims the petitioner had put his hand in Waters' pants, (7) waters insisted they take their things and leave the house, and (8) the girls walked to a gas station and telephoned a friend who picked them up. S.F. Trial, Volume 4 of 5, testimony of Michelle Sims, at pp. 8–25. Sims' mother testified her daughter was gone from home for five days when the incident in question transpired. *Id.,* testimony of Kathleen Sims, at pp. 32–37 & 39–40.

36. S.F. Trial, Volume 4 of 5, testimony of Kim Riffe, at pp. 127–31.

37. The mother of the girl in questions testified (1) she left her daughter at home on the evening in question and gave her daughter strict instructions not to leave the house, (2) despite this fact, when she returned home at 3 a.m., her daughter was not home, (3) shortly thereafter, petitioner returned her daughter to their home and informed the mother her daughter had telephoned petitioner from a pay phone and requested a ride to pick up the girl's brother, (4) the mother believed her daughter appeared to be extremely hostile, as if on something, (5) after a violent altercation between mother and daughter, the police arrived, interviewed petitioner, and allowed petitioner to leave the scene, (6) she believed her daughter could not have gotten to a location to purchase drugs without petitioner's assistance, and (7) she had never seen her daughter in a similar condition before that night and never saw her daughter in a similar condition ever again. S.F. Trial, Volume 4 of 5, testimony of Karen Stevenson, at pp. 111–25.

38. An SAISD supervising officer investigated the incident involving Shamar Stevenson, who was not a district student, and recommended that petitioner be terminated from employment with the district but the district superintendent instead imposed a 15–day period of suspension. S.F. Trial, Volume 4 of 5, testimony of David Johnson, at pp. 41–50.

39. S.F. Trial, Volume 4 of 5, testimony of David Johnson, at pp. 62–64.

40. A former teacher at MLK Middle School testified she observed the petitioner on one occasion hug and carry a female student up a flight of stairs while the student had her arms wrapped around petitioner's neck and petitioner had his hand on the girl's bottom. S.F. Trial, Volume 4 of 5, testimony of Nelda Ann Villegas, at pp. 73–84.

Another former MLK teacher testified (1) on one occasion, petitioner came to her classroom and hugged a female student who had

no time did petitioner take responsibility for his criminal conduct or make a sincere expression of remorse for same.

At the conclusion of the guilt-innocence phase of his trial, the petitioner was convicted of three, separate, offenses in which he manually penetrated the vagina of a 13-year-old student. The petitioner's long record of a demonstrated propensity for inappropriate sexual conduct and contact with female juveniles was clearly established during the punishment phase of petitioner's trial. The sentence petitioner received, i.e., a single 15-year term of imprisonment and a pair of probated 10-year terms, was significantly below the maximum punishment of three life sentences petitioner could have received for his three convictions. Given petitioner's multiple offenses and long history of similar misconduct, petitioner's sentence was far closer to the minimum sentence petitioner could have received than can reasonably be explained by an objective review of the evidence. Petitioner offered virtually no mitigating evidence at the punishment phase of his trial. Instead, petitioner merely presented testimony from his brother and wife establishing they were prepared to support petitioner if the jury chose to grant petitioner a probated sentence.[41] Under such circumstances petitioner alleges no facts establishing a reasonable probability that, but for the presence of Arias on petitioner's jury, the sentence the jury imposed on petitioner would have been significantly less harsh.

### 3. *Failure to Request Instructions to Disregard Hearsay*

### a. *State Court Disposition*

The state habeas trial court found petitioner's trial counsel timely objected to several instances of testimony alluding to extraneous bad acts by petitioner given during the guilt-innocence phase of trial and concluded the failure of said counsel to specifically request a curative instruction directing the jury to disregard same after each such incident did not cause the performance of said counsel to fall below an objective level of reasonableness.[42]

### b. *No Deficient Performance*

 Petitioner argues that if his trial counsel had properly preserved his complaint regarding the repeated violations of the trial court's ruling on petitioner's motion in limine (barring any mention of extraneous bad acts by petitioner) by requesting a curative instruction (instead of merely moving for mistrial) after each favorable ruling by the trial court, the Texas Fourth Court of Appeals would not have subsequently denied on procedural grounds petitioner's point of error asserting the trial court erred in failing to properly enforce its earlier ruling on petitioner's motion in limine. However, petitioner acknowledges that, during the guilt-innocence phase of trial, his trial counsel requested the trial court instruct the jury to disregard *all* testimony relating to any allegations of misconduct on

---

just assaulted her and (2) she frequently observed petitioner hugging female students inappropriately. *Id.*, testimony of Karen Harris, at pp. 86–93.

A SAISD school counselor testified about an incident in which she observed (1) a female student run from petitioner's office long after the end of the school day, i.e., at a time when that portion of the school was off limits

to students, and (2) the petitioner pursue the girl until petitioner saw he was being observed by other adults. *Id.*, testimony of Maria Elena Carrizales, at pp. 95–108.

**41.** S.F. Trial, Volume 4 of 5, testimony of Charles Mass, III, at pp. 149–54; testimony of Vera Mass, at pp. 155–59.

**42.** State Habeas Transcript, at pp. 72–74.

the part of petitioner other than those with which petitioner was charged in this case and the trial court gave precisely such an instruction.[43] Failing to request a curative instruction following every technical violation of the trial court's ruling on petitioner's motion in limine might have precluded state appellate review of petitioner's complaint regarding the repeated violation of the trial court's ruling. However, the primary goal of petitioner's trial counsel at the guilt-innocence phase of trial was not simply to preserve issues for potential appellate review but, rather, to obtain a favorable verdict. By requesting and obtaining a global, curative, instruction of the type given by the trial court, petitioner's trial counsel acted in a wholly reasonable manner. Said counsel sought and obtained a jury instruction directing the jury to disregard *all* testimony about any incident of alleged misconduct by petitioner other than those charged in the three counts of the indictment against him. Juries are presumed to follow their instructions. *Zafiro v. United States*, 506 U.S. at 540–41, 113 S.Ct. at 939.

This Court need not agree with the state habeas trial court's findings of fact and conclusions of law to conclude the Texas Court of Criminal Appeals' ultimate decision rejecting this aspect of petitioner's ineffective assistance claim was an objectively reasonable application of clearly established federal law. In this Circuit, a federal habeas court reviewing a state court's rejection on the merits of a claim for relief pursuant to the AEDPA must focus exclusively on the propriety of the ultimate decision reached by the state court and not evaluate the quality, or lack thereof, of the state court's written opinion supporting its decision. *See Pondexter v. Dretke*, 346 F.3d at 148 (holding the precise question before a federal habeas court in reviewing a state court's rejection on the merits of an ineffective assistance claim is whether the state court's ultimate conclusion was objectively reasonable); *Anderson v. Johnson*, 338 F.3d at 390 (holding a federal habeas court reviews only a state court's decision and not the opinion explaining that decision); *Neal v. Puckett*, 286 F.3d at 246 (holding a federal court is authorized by § 2254(d) to review only a state court's decision and not the written opinion explaining that decision).

This Court politely declines respondent's invitation to speculate on the sub-

**43.** More specifically, after the trial court instructed the complainant not make any further reference to other alleged misconduct by the petitioner, and the trial court admonished the prosecution to avoid venturing into any area which might elicit a response similar to the one the trial court had just found objectionable, the trial court instructed the jury on the record as follows:

I am instructing you now that you are to disregard any testimony of any alleged instances, other than the one that is charged in this case, and that they are—any other allegations or whatever that might be referred to by—or has been referred to or have been referred to by any other witnesses other than the incidents that specifically happened in this case, or that are specifically alleged in this case as read in

the indictment you heard at the beginning of the trial, are to be wholly disregarded and are not to be considered in any way, shape or form by you in this case, unless you are specifically allowed to do that.

And if you are specifically allowed to do that, then I will give you the specific limiting instruction. Again, as I indicated to you in the instructions at the beginning of this case. But at this point I am very strongly admonishing you not to consider any of that evidence of any other alleged instances that may or may not have occurred before, or separate and apart from the incidence that is alleged, or incidences that [sic] alleged in this particular case in this particular indictment.

S.F. Trial, Volume 3 of 5, at p. 110

jective reasons why petitioner's trial counsel might have chosen to wait until after there had been several violations of the trial court's favorable ruling on petitioner's motion in limine to request a curative instruction. Such speculation is unnecessary because, under the first prong of the *Strickland* test, the evaluation of the reasonableness of trial counsel's performance is an *objective* inquiry. Viewed objectively, the broadly-worded curative instruction given by petitioner's trial court could reasonably have been expected to cure any harm to petitioner arising from those incidents in which a witness mentioned other, extraneous, allegations of misconduct by petitioner in violation of the trial court's ruling on petitioner's motion in limine. The question before this Court is whether the state habeas court could reasonably have concluded that petitioner's complaints about the performance of his trial counsel failed to satisfy the first prong of the *Strickland* test. *Schaetzle v. Cockrell,* 343 F.3d at 444. This Court has independently reviewed the entire record from petitioner's trial and state habeas corpus proceeding and concludes the state habeas court's conclusion that petitioner's trial counsel acted in an objectively reasonable manner in requesting and obtaining a single, global, curative instruction (as opposed to a series of curative instructions) was itself an objectively reasonable application of clearly established federal law.

Given the broad-ranging curative instruction petitioner's trial counsel requested and obtained during the guilt-innocence phase of petitioner's trial, the Texas Court of Criminal Appeals' conclusion that this portion of petitioner's ineffective assistance claim failed to satisfy the deficient performance prong of *Strickland* was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor

based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's trial and state habeas corpus proceedings.

### c. *No Prejudice*

Because the state habeas court made no effort to address the prejudice prong of *Strickland* in connection with this aspect of petitioner's ineffective assistance claim, this Court's evaluation of the prejudice prong is necessarily *de novo*. *Rompilla v. Beard,* 545 U.S. at 388, 125 S.Ct. at 2467 (holding *de novo* review of the prejudice prong of *Strickland* was required where the state courts rested their rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins v. Smith,* 539 U.S. at 534, 123 S.Ct. at 2542 (holding the same).

 The state trial court gave the jury as broad a curative instruction regarding petitioner's alleged extraneous misconduct as could reasonably be expected. There is no reasonable probability that, but for the failure of petitioner's trial counsel to request curative instructions of a similar nature after each breach of the trial court's ruling on petitioner's motion in limine, the outcome of the guilt-innocence phase of petitioner's trial would have been any different.

Insofar as petitioner argues his trial counsel should have sought a similar "curative" instruction during the punishment phase of his trial in connection with the hearsay testimony of Michelle Sims, that argument is without legal or factual foundation. The state appellate court concluded Sims' hearsay testimony was properly admitted under a well-settled exception to the Hearsay Rule for excited utterances. Thus, there was no evidentiary error to be

"cured" in connection with Sims' hearsay punishment-phase trial testimony.

Likewise, given the petitioner's extremely lenient sentence despite petitioner's failure to accept responsibility for his offenses or to express sincere remorse for his crimes, there is no reasonable probability that, but for the failure of petitioner's trial counsel to seek additional curative instructions regarding testimony about petitioner's extraneous misconduct, the sentence petitioner actually received would have been significantly less harsh.

### 4. *Failure to Investigate and Present Evidence*

#### a. *The Claims*

In his final complaint regarding his trial counsel, petitioner argues his trial counsel should have more thoroughly investigated the case against petitioner and, if they had done so, could have presented evidence at trial showing (1) petitioner was assigned to patrol duties generally, and not to the MLK Middle School campus, on the dates of the alleged offenses, (2) a physical education instructor at MLK Middle School disliked petitioner, and (3) the complainant's reputation among her teachers for veracity was poor. More specifically, petitioner complains his trial counsel should have obtained and employed a series of documents addressing these issues and should have subpoenaed SAISD staff and others to testify about the foregoing subjects. The state habeas trial court did not specifically address this aspect of petitioner's multi-faceted ineffective assistance claim but, rather, merely summarily concluded petitioner's trial counsel was not ineffective.[44]

#### b. *No Deficient Performance*

■ Petitioner has failed to allege any specific facts showing either (1) his trial counsel were unaware of the information contained in any of the documents in question, (2) his trial counsel were unaware of the existence of the documents in question, or (3) his trial counsel's failure to present testimony of any of the potential witnesses identified by petitioner was the product of anything more than an objectively reasonable trial strategy. As explained above, it is strongly presumed that defense counsel acted in an objectively reasonable manner. *See Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066 (holding it is strongly presumed counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment). Petitioner alleges no specific facts showing how or when he came into possession of any of the documents in question or otherwise negating the possibility his trial counsel were aware of the existence and contents of all the documents in question prior to petitioner's trial. Nor has petitioner alleged any specific facts showing these documents contained any information unknown to petitioner's trial counsel which might have assisted in petitioner's defense.

The purportedly undiscovered documents which petitioner attached to his application for state habeas corpus relief consisted of (1) a two-page report dated August 6, 2000 prepared by SAISD Police chief David Johnson summarizing the investigations into a series of complaints of allegedly inappropriate contact between petitioner and three different MLK Middle School students, including the complainant, (2) a one-page, unsigned, draft affidavit dated September 21, 2000 prepared by SAISD Detective R. Rodriguez apparently intended for execution by

---

**44.** State Habeas Transcript, at pp. 72–74.

Eugenia Evans recounting the complainant's outcry to Evans about petitioner having "fingered" the complainant while giving the complainant a ride home late at night in his personal vehicle, (3) a two-page report dated October 5, 2000 prepared by private investigator Kenneth Hays recounting Hays' interviews with Eugenia Evans and MLK Principal Bullock concerning the allegations of inappropriate contact by petitioner with the complainant, and (4) a two-page letter dated January 30, 2000 from Belinda Cruz to SAISD Police Chief Johnson relating information Mrs. Cruz's daughter had told her about various allegations of misconduct by petitioner.[45]

None of the four individuals who prepared the documents in question purport therein to possess personal knowledge regarding any of the matters addressed in those documents. Instead, Chief Johnson, Detective Rodriguez, investigator Hays, and Mrs. Cruz merely recite information related to them by others. As such, all four of the documents in question contain little more than rank hearsay and, in some cases, hearsay within hearsay. None of the documents would have been admissible at petitioner's trial.

Furthermore, the first three documents contain hearsay statements which corroborate the complainant's trial testimony. Mrs. Cruz's letter contains both hearsay and hearsay-within-hearsay statements accusing various MLK students of lying, allegedly at the urging of a physical education instructor, about misconduct on the part of petitioner but does not specifically address the complainant's allegations about petitioner's sexual assaults upon her. None of the documents include any exculpatory or mitigating evidence. None of these documents furnish any evidentiary basis for impeaching any of the prosecution's trial witnesses. Therefore, there was nothing objectively unreasonable with the failure of petitioner's trial counsel to present any of these documents during petitioner's trial. The documents did not contain any information which could have been helpful to petitioner's trial counsel.

■ The same is true for petitioner's complaints that his trial counsel failed to call Mrs. Cruz, MLK Middle School Principal Bullock, Custodian Evans, and Coach Theda Wilson to testify at trial. Complaints about uncalled witnesses are not favored in federal habeas corpus proceedings because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. *Coble v. Dretke*, 444 F.3d 345, 350 (5th Cir.2006); *United States v. Harris*, 408 F.3d 186, 190 (5th Cir.2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 297, 163 L.Ed.2d 259 (2005); *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir.2003), *cert. denied*, 541 U.S. 1057, 124 S.Ct. 2160, 158 L.Ed.2d 757 (2004); *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir.2002); *Sayre v. Anderson*, 238 F.3d 631, 635–36 (5th Cir. 2001). Petitioner did not present the state habeas court any affidavits or sworn statements executed by any of these four

---

**45.** State Habeas Transcript, at pp. 22–26 & 37–38.

In his state habeas pleadings, petitioner referred to several additional document, including (1) an "affidavit" of MLK Principal Earl Bullock, Jr. purportedly dated February 25, 2000, (2) a "statement" executed by Eugenia Evans, (3) an "affidavit" dated October 5, 2000 executed by Kenneth Hays, and (4) an

"affidavit" executed by Belinda Cruz. However no documents meeting those descriptions were included in petitioner's state habeas pleadings and none have been presented to this Court. None of the various statements and reports that were attached to petitioner's state habeas pleadings even begin to satisfy the requirements of a sworn statement, much less an "affidavit."

persons indicating any of them possessed *personal* knowledge of the facts or circumstances giving rise to the complainant's allegations against petitioner. Nor did petitioner present the state habeas court with any fact-specific allegations, much less any admissible evidence, showing any of these four uncalled witnesses could have offered admissible trial testimony which would have impeached the complainant's trial testimony on any material point.[46]

Insofar as petitioner faults his trial counsel for allegedly failing to discover documents and other evidence establishing petitioner was assigned general patrol duties, rather than assigned exclusively to the MLK Middle School campus, in the Fall of 1999, petitioner fails to explain why he did not make his trial counsel aware of this information prior to trial. Petitioner most assuredly was personally aware of this information prior to his trial. The Supreme Court has emphasized that the reasonableness of a trial counsel's decision to investigate or not to investigate a particular subject is dependent in considerable part on the information furnished to said counsel by the defendant and others. *See Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. at 2066:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. * * * And when a defendant has given

counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Petitioner does not allege any specific facts showing why he failed to inform his own trial counsel of the fact he was not assigned to the MLK campus in the Fall of 1999. Trial attorneys cannot reasonably be faulted for failing to present relevant evidence their client and other witnesses failed to disclose. *See Johnson v. Cockrell,* 306 F.3d 249, 252–53 (5th Cir.2002) (noting the trial counsel in that case interviewed the petitioner's family members at length concerning a "laundry list" of topics beginning with the petitioner's childhood), *cert. denied,* 538 U.S. 926, 123 S.Ct. 1573, 155 L.Ed.2d 319 (2003); *Soria v. Johnson,* 207 F.3d 232, 250–51 (5th Cir.2000) (trial counsel should not be faulted for the defendant's decision to conceal evidence of physical abuse), *cert. denied,* 530 U.S. 1286, 121 S.Ct. 2, 147 L.Ed.2d 1027 (2000); *West v. Johnson,* 92 F.3d 1385, 1408–09 (5th Cir. 1996) (holding trial counsel was not deficient in failing to investigate petitioner's mental health history where (1) it was undisputed that nothing about the petitioner's statements or conduct alerted trial counsel to any history of mental health problems or gave said counsel other reason to suspect the petitioner had suffered organic brain damage, (2) there was no allegation petitioner had ever been hospitalized for a head injury or mental illness

---

**46.** Because the complainant was under fourteen years of age at the time petitioner assaulted her, whether the complainant "enjoyed," "liked," invited, or otherwise en-

couraged petitioner to manually penetrate her sexual organ was not material to any issue at the guilt-innocence phase of petitioner's trial.

or that the petitioner had ever been diagnosed with any sort of brain damage, psychosis, or psychiatric or psychological problems, and (3) there was no allegation petitioner or petitioner's family ever gave trial counsel reason to believe pursuing further investigation into petitioner's social, educational, or mental health history would furnish mitigating evidence), *cert. denied,* 520 U.S. 1242, 117 S.Ct. 1847, 137 L.Ed.2d 1050 (1997).

Even assuming documents at the time of petitioner's trial existed which would have shown petitioner was assigned general patrol duties in the Fall of 1999, petitioner alleges no specific facts showing how his trial counsel could have made beneficial use of this information. The complainant's trial testimony was that, on each of the evenings on which petitioner assaulted her, petitioner drove her and other students home from the MLK campus after an after-school basketball game in his own private vehicle. Petitioner alleges no specific facts showing how the fact petitioner was assigned "general patrol" duties prevented or otherwise precluded petitioner from being physically present at MLK Middle School on any of the occasions on which the complainant alleged petitioner gave her and other students a ride home in his personal vehicle. It was undisputed petitioner violated SAISD policy when he gave female students a ride without another district employee being present.[47] Thus, whether petitioner was officially "on duty" or "on station" at the time petitioner assaulted the complainant was irrelevant to any issue properly before the jury. Petitioner does not allege any specific facts showing any documents existed at the time of his trial which would have established petitioner was never physically at MLK Middle School on the evenings on which the complainant alleged petitioner assaulted her in his private vehicle. Petitioner's trial counsel cannot be faulted for failing to discover documents containing information already well known to petitioner or which had no potential beneficial utility at trial.

Under such circumstances, following *de novo* review, this Court independently concludes the failure of petitioner's trial counsel to present at trial any of the documents or witnesses identified by petitioner in his pleadings in this cause or in petitioner's state habeas corpus pleadings did not cause the performance of said counsel to fall below an objective level of reasonableness.

### c. *No Prejudice*

■■■ In order to satisfy the prejudice prong of *Strickland,* a federal habeas petitioner asserting ineffective assistance premised on a failure to present evidence at trial must (1) identify the evidence in question with specificity, (2) establish the evidence in question possessed either exculpatory, mitigating, or impeachment value, and (3) establish the evidence was either (a) directly admissible at his trial, (b) capable of serving as part of the predicate for the admission of other, material, evidence, or (c) beneficial to impeach the trial testimony of prosecution witnesses. *See Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir.1994) (holding absent a specific, affirmative showing of precisely what evidence or testimony was rendered unavailable due to a trial counsel's failure to investigate, develop, and present same, i.e., a showing of exactly what the missing evidence or testimony would have been, a

---

**47.** Former SAISD Police Chief David Johnson testified without contradiction at petitioner's trial that district policy required male officers such as petitioner to have another officer or an administrator present with them whenever they transported a female student. S.F. Trial, Volume 3 of 5, testimony of David Johnson, at pp. 62–63.

court cannot even begin to apply the *Strickland* analysis because it is very difficult to determine whether the defendant was prejudiced by any such deficiencies in counsel's performance).

■ For the reasons set forth above, petitioner has alleged no specific facts showing that any of the "undiscovered" documents or uncalled witnesses identified by petitioner would have furnished any exculpatory, mitigating, or material impeachment evidence. For instance, petitioner argues his trial counsel should have called MLK physical education instructor Theda Wilson to testify and used Mrs. Cruz's hearsay-within-hearsay letter to impeach Coach Wilson's testimony. However, petitioner does not allege any facts showing Coach Wilson had *personal* knowledge of any facts relevant to the complainant's allegations against petitioner. Absent a showing that Coach Wilson possessed *personal* knowledge of any material facts, Coach Wilson could not have furnished any admissible testimony at petitioner's trial. Nothing in Mrs. Cruz's unauthenticated, unsworn, hearsay-within-hearsay letter establishes Coach Wilson had personal knowledge of any facts material to the complainant's allegations against petitioner. In view of the petitioner's failure to allege any facts showing Coach Wilson ever possessed any *personal* knowledge regarding the circumstances surrounding the complainant's allegations against petitioner, petitioner's argument offers no clue as to how or why impeaching Coach Wilson would have made any difference at either phase of petitioner's trial.

Petitioner also argues his trial counsel should have further investigated and called MLK teachers to testify about the complainant's poor reputation for veracity. However, at the guilt-innocence phase of trial petitioner's trial counsel did call a former MLK math teacher who testified the complainant's reputation for being truthful was bad, the complainant was a troubled child, and the complainant was frequently a disruptive force in class.[48] Petitioner does allege any facts specifically identifying any other MLK teachers who were available to testify at the time of petitioner's trial as to the complainant's bad reputation for veracity. Nor does petitioner allege any specific facts showing a reasonable likelihood that, but for the failure of his trial counsel to present what clearly would have been cumulative testimony, the outcome of either phase of petitioner's trial would have been any different.

Because petitioner has alleged no specific facts showing that any of the documents or uncalled witnesses whom petitioner has identified could have furnished petitioner's trial counsel with any *admissible* exculpatory, mitigating, or impeachment evidence, there is no reasonable probability that, but for the failure of petitioner's trial counsel to discover, develop, and present those documents and those witnesses at trial, the outcome of either phase of petitioner's trial would have been different.

### 5. *Conclusions*

Having independently reviewed the record from petitioner's trial, direct appeal, and state habeas corpus proceedings *de novo*, this Court concludes none of petitioner's complaints about the performance of his trial counsel satisfy *either* prong of *Strickland*. Accordingly, the Texas Court of Criminal Appeals' summary denial on the merits of petitioner's complaints of ineffective assistance by petitioner's trial counsel was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as deter-

---

48. S.F. Trial, Volume 3 of 5, testimony of Zanita Reed, at pp. 195–200.

mined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

### D. *Complaints About Appellate Counsel*

#### 1. *State Court Disposition*

In the course of his state habeas corpus proceeding, petitioner complained his original state-court-appointed appellate counsel failed to timely file petitioner's appellant's brief, was found in contempt, and was subsequently replaced by a second court-appointed state appellate counsel.[49] The state habeas trial court concluded the appointment of a second appellate counsel, who subsequently filed an appellant's brief on petitioner's behalf, cured any complaint petitioner might have had with the performance of his first state appellate counsel.[50]

#### 2. *Procedural Default on Unexhausted Complaints*

In his pleadings in this Court, petitioner argues his state appellate counsel rendered ineffective assistance by failing to (1) file a timely motion for new trial, (2) file a timely appellant's brief, and (3) assert each of the points of error contained in petitioner's *pro se* supplemental appellant's brief.

Respondent correctly points out that petitioner failed to "fairly present" the first and last of these complaints in petitioner's state habeas corpus pleadings, rendering those complaints unexhausted and, therefore, procedurally defaulted. *Coleman v. Thompson,* 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1; *Hughes v. Dretke,* 412 F.3d at 595. Petitioner has alleged no specific facts sufficient to satisfy either of the two

exceptions to the doctrine of procedural default with regard to his complaints about his appellate counsel's failures to file a timely motion for new trial or to include all of the points of error contained in petitioner's *pro se* supplemental appellant's brief in petitioner's appellant's brief.

Thus, the only ineffective assistance claim addressing the performance of petitioner's appellate counsel properly before this Court is petitioner's complaint that his appellant's brief was not filed until September, 2003, more than a year after his conviction.

#### 3. *No Prejudice*

The dual prongs of *Strickland* apply to complaints about the performance of counsel on appeal. *See Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000) (holding a petitioner arguing ineffective assistance by his appellate counsel must establish both that (1) his appellate counsel's performance was objectively unreasonable and (2) there is a reasonable probability that, but for appellate counsel's objectively unreasonable conduct, the petitioner would have prevailed on appeal).

 As the state habeas trial court noted, petitioner's first court-appointed state appellate counsel was dismissed for failing to comply with the state appellate court's deadlines and a second attorney was appointed to represent petitioner on direct appeal. Petitioner's second state appellate counsel filed a brief on petitioner's behalf asserting two non-frivolous, albeit ultimately unsuccessful, points of error. Petitioner alleges no specific facts showing that, but for the failure of his appellate counsel to file petitioner's appellant's brief more expeditiously, the out-

---

**49.** State Habeas Transcript, at pp. 16–17.

**50.** State Habeas Transcript, at pp. 72–74.

come of petitioner's direct appeal would have been any different. Thus, petitioner's lone, exhausted, complaint about the performance of his appellate counsel fails to satisfy the prejudice prong of *Strickland*.

The Texas Court of Criminal Appeals' rejection on the merits of petitioner's ineffective assistance claim arising from petitioner's complaint about the timeliness of his state appellate counsel's filing of petitioner's state appellant's brief was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state habeas corpus proceeding.

### 4. *Conclusions*

Petitioner failed to exhaust available state remedies with regard to his complaints that his state appellate counsel failed to file a timely motion for new trial and failed to include all the points of error in petitioner's appellant's brief which petitioner's identified in petitioner's *pro se* supplemental brief. As a result, petitioner procedurally defaulted on those aspects of his claim of ineffective assistance by his appellate counsel. Petitioner's remaining assertion of ineffective assistance by his appellate counsel fails to satisfy the prejudice prong of *Strickland*.

### X. *Certificate of Appealability*

The AEDPA converted the "certificate of probable cause" that was required as a prerequisite to an appeal from the denial of a petition for federal habeas corpus relief into a Certificate of Appealability ("CoA"). *See Hill v. Johnson*, 114 F.3d 78, 80 (5th Cir.1997) (recognizing the "substantial showing" requirement for a CoA under the AEDPA is merely a change in nomenclature from the CPC standard);

*Muniz v. Johnson*, 114 F.3d 43, 45 (5th Cir.1997) (holding the standard for obtaining a CoA is the same as for a CPC). The CoA requirement supersedes the previous requirement for a certificate of probable cause to appeal for federal habeas corpus petitions filed after the effective date of the AEDPA. *Robison v. Johnson*, 151 F.3d 256, 259 n. 2 (5th Cir.1998), *cert. denied*, 526 U.S. 1100, 119 S.Ct. 1578, 143 L.Ed.2d 673 (1999); *Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.1997), *cert. denied sub nom. Monroe v. Johnson*, 523 U.S. 1041, 118 S.Ct. 1342, 140 L.Ed.2d 502 (1998).

 Under the AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under Section 2254, the petitioner must obtain a CoA. *Miller–El v. Cockrell*, 537 U.S. 322, 335–36, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); 28 U.S.C. § 2253(c)(2). Likewise, under the AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n. 10 (5th Cir.2002) (holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Jones v. Cain*, 227 F.3d 228, 230 n. 2 (5th Cir.2000) (holding the same); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir.1997) (holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted). In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted alone. *Crutcher v. Cockrell*, 301 F.3d at 658 n. 10; *Lackey v. Johnson*, 116 F.3d at 151; *Hill v. Johnson*, 114 F.3d at 80; *Muniz v. Johnson*, 114 F.3d at 45; *Murphy v. Johnson*, 110 F.3d 10, 11 n. 1 (5th Cir.1997); 28 U.S.C. § 2253(c)(3).

A CoA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke,* 542 U.S. 274, 282, 124 S.Ct. 2562, 2569, 159 L.Ed.2d 384 (2004); *Miller–El v. Cockrell,* 537 U.S. at 336, 123 S.Ct. at 1039; *Slack v. McDaniel,* 529 U.S. 473, 483, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000); *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). To make such a showing, the petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard v. Dretke,* 542 U.S. at 282, 124 S.Ct. at 2569; *Miller–El v. Cockrell,* 537 U.S. at 336, 123 S.Ct. at 1039; *Slack v. McDaniel,* 529 U.S. at 484, 120 S.Ct. at 1604; *Barefoot v. Estelle,* 463 U.S. at 893 n. 4, 103 S.Ct. at 3394 n. 4. This Court is authorized to address the propriety of granting a CoA *sua sponte. Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir.2000).

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim. If this Court rejects a prisoner's constitutional claim on the merits, the petitioner must demonstrate reasonable jurists could find the court's assessment of the constitutional claim to be debatable or wrong. "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253©) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller–El v. Cockrell,* 537 U.S. at 338, 123 S.Ct. at 1040 (*quoting Slack v. McDaniel,* 529 U.S.

at 484, 120 S.Ct. at 1604). *Accord Tennard v. Dretke,* 542 U.S. at 282, 124 S.Ct. at 2569. In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* whether this Court was correct in its procedural ruling. *See Slack v. McDaniel,* 529 U.S. at 484, 120 S.Ct. at 1604 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable whether (1) the claim is a valid assertion of the denial of a constitutional right and (2) the district court's procedural ruling was correct).

There can be no dispute among reasonable jurists over the fact petitioner failed to "fairly present" either his insufficient evidence claim, his fair cross-section claim, and two of his complaints about the performance of his appellate counsel to the Texas Court of Criminal Appeals. Petitioner's complaints on direct appeal about the admission of hearsay evidence were couched exclusively in terms of alleged state-law violations and, thus, failed to "fairly present" federal constitutional issues to the state appellate court. There is likewise no basis for dispute among reasonable jurists that petitioner has failed to allege any facts sufficient to satisfy either of the exceptions to the procedural default doctrine in connection with any of his unexhausted claims herein.

There can be no disagreement among reasonable jurists over this Court's conclusion that the state habeas court's rejection on the merits of petitioner's ineffective assistance claims was itself the product of

a clearly reasonable application of the two-prong *Strickland* standard. In fact, there is no room for disagreement among reasonable jurists with this Court's conclusion that none of petitioner's complaints of ineffective assistance by his trial or appellate counsel satisfy the prejudice prong of *Strickland.*

Petitioner's *Brady* claims are without arguable merit because none of the documents petitioner has identified as allegedly "withheld" by the prosecution contain any information which satisfies the materiality prong of *Brady.* As this Court explained at great length in Section IX.C.4.b. above, none of these documents contain any material exculpatory, mitigating, or impeachment evidence. Thus, neither the prosecution's alleged failure to obtain and present these documents to petitioner's trial counsel nor the failure of petitioner's trial counsel to obtain same directly from the school district had any impact whatsoever on the outcome of either phase of petitioner's trial.

There is no room for disagreement among reasonable jurists over the fact petitioner's complaints regarding the state trial court's rulings on petitioner's hearsay objections did not invoke a federal constitutional claim. A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair. *Kittelson v. Dretke,* 426 F.3d 306, 320 (5th Cir.2005); *Brown v. Dretke,* 419 F.3d at 376; *Pemberton v. Collins,* 991 F.2d 1218, 1226 (5th Cir.1993), *cert. denied,* 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993). The challenged evidence must be a crucial, critical, or highly significant factor in the context of the entire case. *Givens v. Cockrell,* 265 F.3d 306, 308 (5th Cir.2001); *Wilkerson v.*

*Cain,* 233 F.3d 886, 890 (5th Cir.2000); *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir.1999); *Little v. Johnson,* 162 F.3d 855, 860 (5th Cir.1998), *cert. denied,* 526 U.S. 1118, 119 S.Ct. 1768, 143 L.Ed.2d 798 (1999); *Green v. Johnson,* 160 F.3d 1029, 1047 (5th Cir.1998), *cert. denied,* 525 U.S. 1174, 119 S.Ct. 1107, 143 L.Ed.2d 106 (1999). The test to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Guidroz v. Lynaugh,* 852 F.2d 832, 835 (5th Cir.1988); *Rogers v. Lynaugh,* 848 F.2d 606, 609 (5th Cir.1988).

Petitioner's trial court gave a very clear, very broad, curative instruction at the guilt-innocence phase of trial directing the jury to disregard *all* testimony concerning any extraneous allegations of misconduct by petitioner, i.e., any allegations other than the specific allegations raised by the complainant and included in the indictment against petitioner.[51] Juries are presumed to follow such instructions. *Zafiro v. United States,* 506 U.S. at 540–41, 113 S.Ct. at 939. In view of the state trial court's broad, curative instruction, the violations of the trial court's ruling on petitioner's motion in limine concerning evidence of extraneous misconduct by petitioner did not render petitioner's trial fundamentally unfair. Reasonable jurists could not disagree on this point.

For the foregoing reasons, petitioner is not entitled to a Certificate of Appealability with regard any of his claims for relief herein.

Accordingly, it is hereby **ORDERED** that:

1. The referral of this cause to the Magistrate Judge is **WITHDRAWN.**

---

**51.** S.F. Trial, Volume 3 of 5, at p. 110.

2. All relief requested in any of petitioner's pleadings in this cause, i.e., docket entry nos. 3, 4, and 15, is **DENIED**.

3. Petitioner is **DENIED** a Certificate of Appealability.

4. All other pending motions are **DISMISSED** as moot.

5. The Clerk shall prepare and enter a Judgment in conformity with this Memorandum Opinion and Order.